**Alfredo Colon GONZALEZ, Plaintiff,**

v.

**Elisa Diaz GONZALEZ, Secretary of Social Services, and Milagros Guzman, Director of Personnel, Defendants.**

Civ. No. 461–73.

United States District Court, D. Puerto Rico.

Nov. 15, 1973.

On Motion for Reconsideration April 4, 1974.

On Motion to Amend or Set Aside June 6, 1974.

Laffitte & Dominguez, Hato Rey, P. R., for plaintiff.

Peter Ortiz, Dept. of Justice, Com. of Puerto Rico, San Juan, P. R. for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TOLEDO, Chief Judge.

This cause is before the Court pursuant to plaintiff's action for equitable relief and damages brought under Section 1983 of the Civil Rights Act, Title 42, United States Code and its jurisdictional counterpart, Title 28, United States Code, Section 1343, against the Secretary of Social Services of the Commonwealth of Puerto Rico, Elisa Diaz González and the Director of Personnel of the Commonwealth of Puerto Rico, Milagros Guzmán, in view of the termination of his employment at the Department of Social Services of the Commonwealth of Puerto Rico. Plaintiff seeks redress before this Court alleging defendants have deprived him of his rights and privileges secured by the First and Fourteenth Amendments to the Constitution of the United States.

Upon filing the complaint on May 24, 1973, plaintiff applied on May 29, 1973, for a temporary restraining order. The application was not granted and in lieu thereof an order to show cause was entered against defendants. The hearing thereon was set for August 24, 1973, but subsequently rescheduled for September 27th, October 3rd and 4th, 1973, wherein full hearings were had. Before the commencement of the hearings, the parties

agreed, with the Court's approval, to consolidate the application for preliminary and permanent injunction in order to avoid further hearings on this aspect of the case. The question of damages was left for further litigation, if necessary.

The Court having held the necessary hearings, having considered the extensive documentary and testimonial evidence and having considered the post trial memorandum filed by the defendant, enters the following

## FINDINGS OF FACT

1. Plaintiff has been a career employee in the civil service of the Government of Puerto Rico since September 8, 1944, and thereafter for twenty-nine uninterrupted years, having served during said years in the Office of Personnel, the Department of Labor and the Department of Social Services of the Government of the Commonwealth of Puerto Rico.

2. By March 1974, plaintiff would have accumulated thirty years of service and would be eligible to a merit pension of approximately $1,047 per month for life, pursuant to the retirement plan for government employees of the Commonwealth of Puerto Rico.[1] His present situation, where his services have been terminated, makes him ineligible for such benefits.

3. On March 1958, plaintiff, who had the status of a permanent or regular employee in the competitive service under the Personnel Act, Title 3, Laws of Puerto Rico Annotated, Section 648(c), was promoted at the request of then Secretary of Labor, Fernando Sierra Berdecía, to Executive Officer V, a position with executive functions. However, upon request of said Secretary of Labor, the then Director of Personnel of the Office of Personnel of the Commonwealth of Puerto Rico, in accordance with Title 3, Laws of Puerto Rico Annotated, Section 648(d),[2] determined and ordered that plaintiff continue in the competitive service.[3] (Plaintiff's Exhibit 8).

4. Plaintiff continued his employment at the Department of Labor in various capacities, including serving as Director of the Bureau of Employment Security thereof, an Executive Director III position. At all times he had the status of a regular employee in the competitive service, although the positions held were of trust and confidence (executive), the non-competitive type.

5. In January 1969, the Department of Social Services was established pursuant to Act No. 171 of June 30, 1968. At the request of the then Secretary of Social Services, Efrain Santiago, plaintiff was transferred, on September 16, 1970, from the Department of Labor to the Department of Social Services, to the position of Executive Director IV, as Assistant Secretary of Administration.

6. Plaintiff had accepted the Secretary of Social Services' offer to join his administration subject and conditioned

---

1. The Retirement System for public employees of the Government of Puerto Rico appears at Title 3, Laws of Puerto Rico Annotated, Section 761 et seq.

2. This Section provides:
 "Nothing provided in this section shall preclude an appointing authority from assigning the duties and functions of any position in the non-competitive service to an employee in the competitive service."

3. The Court notices that the letter of the then Director of Personnel of the Commonwealth of Puerto Rico, Antonio Cuevas Viret, interprets the provision of Title 3, Laws of Puerto Rico Annotated, Section 648(d) to mean that regular appointments may be made in positions in the Non-Competitive Service following the legal procedures of the Competitive Service; that while the employee thus appointed occupies such position, the position is to be considered as included in the Competitive Service and the employee is entitled to be given all legal protection; and that as soon as an employee so appointed is separated from said position, the position must automatically be considered as included in the Non-Competitive Service. Mr. Cuevas Viret further said that, pursuant to his interpretation, a person to be appointed should be appointed following some of the legal procedures for the appointment of regular employees in the Competitive Service.

to retaining his regular status in the competitive service and getting a raise in salary. Consequently, it was agreed by and between plaintiff and the former Secretary of Social Services that his recruitment at the Department of Social Services would be as Executive Director IV and that it would not impair his status in the competitive service in the Government of the Commonwealth of Puerto Rico. The former Secretary of Social Services had talked about the matter with the former Director of Personnel who expressed there would be no problem in appointing plaintiff in the position of Executive Director IV, in the competitive service.

7. Upon plaintiff's arrival at the Department of Social Services on September 16, 1970, he signed the proper form known as OP–15. The form was prepared stating that plaintiff's position as Executive Director IV was to be included in the non-competitive service. Plaintiff was informed, upon noticing the foregoing and bringing it out to the attention of the pertinent officer of the mentioned administration, that he had to sign the form as filled out, if he wanted to get paid promptly.

8. Subsequently, plaintiff brought the matter to the attention of the former Secretary of Social Services, Efrain Santiago. Mr. Santiago, in view of the situation, formally requested, by letter of October 8, 1971, to the Director of Personnel, Frank Romero, that plaintiff's position be included in the Competitive Service. The request was granted on October 27, 1971 by the Director of Personnel under Section 648(d) of Title 3, Laws of Puerto Rico Annotated; thus granting plaintiff competitive status in the civil service in the Government of the Commonwealth of Puerto Rico. Although no mention was made in the Secretary of the Department of Social Services' letter to the Director of Personnel, as to the conditions upon which plaintiff had originally agreed to accept the position of Executive Director IV, with functions of Assistant Secretary of Administration, but contrarywise the Secretary's request seemed to be based on a recognition to plaintiff's outstanding performance and loyalty, the testimonial evidence introduced at trial reveals that the change was requested to satisfy the promise made to the plaintiff when he advanced to the former Secretary of Social Services the conditions upon which he would accept the then being offered position.[4]

9. After plaintiff was reinstated to a competitive status (October 27, 1971), the Office of Personnel of the Commonwealth of Puerto Rico established a new category for Assistant Secretaries in the agencies and administrations of the Government of the Commonwealth of Puerto Rico. Memorandum 4–71 of the Office of Personnel, dated December 21, 1971. Plaintiff was offered this new classification, but refrained from accepting the same because, although at a higher salary, it entailed a non-competitive status.

10. Throughout his career as a public servant, plaintiff has received numerous promotions, merit awards and acknowledgements for proficiency in the performance of his duties. In plaintiff's record of twenty-nine years of service, there is no one single disciplinary action or reprimand.

11. Plaintiff is a member of the New Progressive Party that was in office from 1969 to 1972.

12. As a result of the Popular Democratic Party winning the Elections held in the Commonwealth of Puerto Rico in

---

4. The evidence seems to reflect that, had the request for change in status of the position made under Section 648(d) of Title 3, Laws of Puerto Rico Annotated, been made by the former Secretary òf Social Services at the time plaintiff was about to start in the position, said request would be exactly the same as the one considered in the authorization of March 18, 1958, of the former Director of Personnel, Antonio Cuevas Viret, when plaintiff was authorized to be appointed in the competitive service to a position of Executive Officer V, with functions in the third ranking level in the Department of Labor of the Commonwealth of Puerto Rico.

1972 and taking the administration of the Government in January, 1973, defendants Elisa Diaz González and Milagros Guzmán were appointed Secretary of Social Services and Director of Personnel, respectively, in substitution of the former Administrators.

13. When defendant Elisa Diaz González took office as Secretary of Social Services, plaintiff placed his functions of Assistant Secretary of Administration at her disposal but reminded her that as Executive Director IV, he was in the competitive service and was willing and able to serve the Department in other functions and duties. Plaintiff further informed defendant Elisa Diaz González, that he was eligible for a merit pension in March 1974. On January 12, 1973, plaintiff was assigned to work under the supervision of Irma Ramírez with functions to be subsequently assigned. When plaintiff moved to his assigned office quarters there was neither a desk nor office facilities available to him.

14. On March 1, 1973, plaintiff was relieved from his duties as Assistant Secretary of Administration and assigned new duties at the Area of Administration for Social Treatment Centers. Plaintiff's functions and duties were described in an OP–16 form mentioned in the memorandum suscribed by defendant Elisa Diaz González. Plaintiff's official title or classification as Executive Director IV in the competitive service remained unchanged, and his monthly salary of $1,655 remained the same.

15. Plaintiff's new functions and duties, as described in the OP–16, under the supervision of the Assistant Secretary for the Centers of Social Treatments was not one of trust and confidence, nor one that carried policy-making decisions.

16. In early January 1972, defendant Elisa Diaz González had several conversations with plaintiff. During one of these conversations, said defendant advised plaintiff that he could not remain occupying the functions of Assistant Secretary of Administration because he was too identified with the New Progressive Party.

17. On March 30, 1973, defendant Elisa Diaz González requested from defendant Milagros Guzmán an opinion (Exhibit 2) about the legality of the employment status of eighteen persons holding office in the Department of Social Services. Plaintiff's name was included in the list. Meanwhile, plaintiff was unaware that his job was in jeopardy. Of the eighteen persons included in defendant Diaz González' letter, none was a member of the Popular Democratic Party and seventeen of them were members of the New Progressive Party. The mentioned letter-request expressed that she was facing problems with recruiting the personnel she needed to exercise functions of trust and policy, for the eighteen persons involved had been given status in the Competitive Service by the prior administration, as authorized by the former Director of the Office of Personnel. With respect to plaintiff's case no mention was made by the defendant Diaz González in relation to the conditions upon which plaintiff accepted the former Secretary of Social Services' invitation to become his Assistant Secretary of Administration.

18. By letter of April 13, 1973, defendant Milagros Guzmán replied that plaintiff's competitive status was improperly granted on October 27, 1971, by the former Director of Personnel and that, accordingly, he had remained in the Non-Competitive Service. Mrs. Guzmán's opinion was to the effect that the approval made under the provisions of Section 648(d) of Title 3, Laws of Puerto Rico Annotated, by the former Director of Personnel of the former Secretary of Social Services' petition with respect to plaintiff's position, was illegal for it was her opinion that at the time of the approval plaintiff was not in the Competitive Service, but contrarywise, in the Non-Competitive Service. No mention was made by defendant Milagros Guzmán with respect to the conditions upon which plaintiff accepted the invitation of the former Secretary of

Social Services and of the former Director of Personnel's knowledge of the same.

19. On May 9, 1971, plaintiff, who was then on sick leave and undergoing medical treatment, received a letter dated April 25, 1973, suscribed by defendant Elisa Diaz González (Exhibit 5), which reads as follows:

"After a thorough study, the State Personnel Office has determined that the action taken in including you in the Competitive Service, pursuant to the provisions of Section 8, Sub-section (d) of the Personnel Act, is illegal. Therefore, you continue as an employee in the Non-competitive Service.

Pursuant to this letter and effective within thirty (30) days from the receipt of this communication, I have decided to terminate your services as Executive Director IV (Assistant Secretary of Administration).

You have a right to request reinstatement to the registry of eligible employees as Executive Director III, position which you held in the Labor Department at the time you were appointed to this agency as Assistant Secretary of Administration."

20. Prior to the interchange of correspondence between defendants Elisa Diaz González and Milagros Guzmán, there were several conversations and meetings between said defendants relative to the contents of said letters.

21. Notwithstanding that defendant Diaz González' letter of April 25, 1973, stated that: "After a thorough study the State Personnel Office has determined . . . ", the testimony of defendant Milagros Guzmán disclosed that:

(a) She did not review or examine plaintiff's personnel file.

(b) She did not know that plaintiff had twenty-nine years of public service and was due for retirement in March 1974.

(c) She did not know that plaintiff was not occupying the position of Assistant Secretary of Administration, and did not know that plaintiff was indeed occupying the position of Executive Director IV at the Social Treatment Center since March 1, 1973.

(d) She relied on a verbal opinion and a written opinion of the Secretary of Justice.[5]

(e) The opinion of the Secretary of Justice relied upon by said defendant did not mention plaintiff's case nor discussed Section 8(d) of the Personnel Act, which was the Section used to determine that plaintiff was unlawfully holding a competitive status in public service.

(f) She did not know about plaintiff's excellent record as a public servant.

22. Plaintiff was not afforded an opportunity to be heard on the abrupt change of status in his civil service career from competitive to non-competitive service, nor on his termination of employment after twenty-nine years of service. The evidence shows that plaintiff was led to believe that he would be allowed to accumulate his thirty years of creditable service.[6] Likewise, plaintiff was not advised that defendants were contemplating divesting him of his rights as an employee in the competitive service or that they were contemplating terminating his public career.

23. The record shows that other public employees of the Social Services Department, members of the New Progressive Party, have been transferred or de-

---

5. It has not passed unnoticed to the Court that defendant Milagros Guzmán stated that she relied on a written opinion of the Secretary of Justice. The opinion was introduced in evidence and bears the date of May 25, 1973, while her letter is dated April 13, 1973.

6. Defendant's memorandum of March 1, 1973, to plaintiff, assigning him new functions at the Social Treatment Centers (Exhibit 6) gives the impression that plaintiff was going to continue working for the Department of Social Services.

moted by defendant Elisa Diaz González.[7]

24. The present suit was filed on May 24, 1973. Plaintiff, on May 29, 1973, after duly notifying the defendants of his intentions, appeared before Chief Judge Hiram R. Cancio, requesting a temporary restraining order against the defendants. At said opportunity, a conference in chambers was held, in which counsel for the defendants were present, and several understandings were reached. It was understood that defendant Elisa Diaz González' letter of April 25, 1973, discharging plaintiff effective on June 9, 1973, while on sick leave, was to be withdrawn, and left without effect and that, furthermore, before June 9, 1973, a new letter substituting the mentioned letter of April 25, 1973, would be sent to the plaintiff and that plaintiff would continue under sick leave as long as his illness and treatment required. It was also understood that the previously mentioned disposition would have the effect of preventing the termination of plaintiff's uninterrupted public service of twenty-nine years, thereby enabling him not to lose his eligibility for a merit pension on March 1974. At said opportunity, Ovidio Santa, present Assistant Secretary of Administration of the Department of Social Services, offered to reinstate plaintiff to a substantially equivalent position, where his salary would not be affected by more than $100.00 a month; but expressed it would take several weeks to create the position.

25. Plaintiff's counsel contacted Ovidio Santa on June 6, 1973, inquiring about the promised letter. Mr. Santa stated the Department of Social Services was trying to create a position of Executive Director II with a monthly salary of $1,180.00; $475.00 monthly less than what plaintiff was making as Executive Director IV.

26. On June 12, 1973, rather than as promised, a new letter was sent to plaintiff by defendant Secretary of Social Services, Elisa Diaz González, reiterating her decision to terminate his services as Executive Director IV, changing its effective date to the date on which his sick leave was exhausted.

27. Plaintiff's counsel again contacted Mr. Santa on August 21, 1973, at which opportunity Mr. Santa informed him that he had recommended the creation of a position of Executive Director II. Mr. Santa was offered by plaintiff's counsel various solutions wherein plaintiff would remain receiving his salary of Executive Director IV until March 1974, when he expected to retire from public service; which solutions Mr. Santa expressed he would discuss with the defendant Secretary of Social Services.

29. On August 30, 1973, plaintiff's counsel sent a letter (Exhibit 3) to defendant Secretary of Social Services answering her proposal of August 21, 1973, to plaintiff. After expressing the events that had transpired in this case since May 29, 1973, he expressed that such a proposal, after plaintiff had been made to incur in legal expenses and medical treatment, was for $475.00 less than his client was entitled and failed to even state whether the position was included in the competitive service. Accordingly, he requested that defendant further clarify whether the new position was included in the competitive service or not and to state the reasons or motivations for a reduction in pay, so that his client could consider the proposition and reply to it. Defendant Secretary of Social Services received the mentioned letter but did not reply to it.[8]

---

7. Testimonies of witnesses Enrique Pérez Ginorio; Carmen Borges; Judith Porrata Doria; Maximino Cajigas.

8. In the mentioned letter plaintiff's counsel called defendant Elisa Diaz González' attention to the fact that he deemed her letter of June 12, 1973, terminating plaintiff's services once he exhausted his sick leave, as an admission that she illegally terminated his services when he was in sick leave. The introduction of the letter into evidence was not questioned by defendants.

In view of the foregoing Findings of Fact, the Court enters the following

## CONCLUSIONS OF LAW

■ This Court has jurisdiction to entertain the present action under the Civil Rights Act. In civil rights actions predicated under Section 1983 of Title 42, United States Code,[9] the elements necessary to establish a claim are that the conduct complained of was engaged in under color of state law and that such conduct subjected plaintiff to deprivation of rights, privileges or immunities guaranteed by the Constitution of the United States. Adickes v. Kress, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225 (D.C.P.R.1972), 346 F.Supp. 106.

■■ The evidence before this Court establishes that both defendants had direct participation in altering plaintiff's status as a career government employee, which event has enabled defendant Elisa Diaz González to directly terminate him from his public employment as Executive Director IV. Both acted pursuant to the provisions of the Personnel Act of the Commonwealth of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Section 641 et seq. It was pursuant to consultation by and between defendants, that it was decided to terminate plaintiff's services. Moreover, defendant Eliza Diaz González testified that she terminated plaintiff based on the written opinion from defendant Milagros Guzmán dated April 17, 1973. Milagros Guzmán had testified that she issued said opinion in reply to a written request of March 30, 1973, from the Secretary of Social Services, Elisa Diaz González. An officer or employee of a State or Territory or one of the political subdivisions thereof will be deemed to be acting under color of law as to those deprivations of rights committed in the fulfillment of the task and obligations assigned to him. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In the case at bar both defendants in their official capacities as Secretary of the Department of Social Services and as Director of Personnel of the Office of Personnel of the Commonwealth of Puerto Rico, respectively, clothed with the authority of their offices and in the fulfillment of their respective task, and predicating their actions on the Personnel Act of the Commonwealth of Puerto Rico engaged in conduct under color of law culminating in the alteration of plaintiff's status as a career government employee and in the termination of twenty-nine years in public service.

Plaintiff's complaint alleges that the Secretary of Social Services, Elisa Diaz González, and the Director of Personnel, Milagros Guzmán, terminated his employment because of his ideological and political beliefs, which are contrary to those of defendants, in violation of the rights guaranteed to him by the First Amendment to the Constitution of the United States. Likewise, he has charged that the termination of his status as a competitive employee, as granted to him by the action of the former Director of Personnel on October 27, 1971, without notice and an opportunity to be heard, after almost twenty-nine years of public service, violates his constitutional right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.

■ While there is no constitutional right to public employment as such, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), all

---

9. Section 1983 of Title 42, United States Code, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

public employees have a constitutional right to be free from arbitrary discharge and from unreasonably discriminatory practices. Whitner v. Davis (9 Cir. 1969), 410 F.2d 24, 30; Rolfe v. County Board of Education of Lincoln County, Tennessee (6 Cir. 1968), 391 F.2d 77, 80; Wolfe v. O'Neill (D.C.Alaska 1972), 336 F.Supp. 1255; Davis v. Board of Trustees of Arkansas A & M College (D.C.Ark.1967), 270 F.Supp. 528, aff. sub. nom.; Board of Trustees of Arkansas A & M College v. Davis (8 Cir. 1968), 396 F.2d 730, cert. den. 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1960). Additionally, a public employee may not be denied public employment because he has exercised his constitutional rights, e. g. freedom of speech and of association. Cf. Perry v. Sindermann and cases cited therein, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See also Illinois State Employees Union, Council 34, etc. v. Lewis (7 Cir. 1972), 473 F.2d 561, cert. den. 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973); Gould v. Walker (D.C.Ill. 1973), 356 F.Supp. 421, 425; Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center (D.C.Pa.1973), 356 F.Supp. 500. Accordingly, a public employee of the Commonwealth of Puerto Rico may not be dismissed from public employment solely on the grounds of political affiliation. See Janda v. State of Illinois (D.C.Ill. 1972), 328 F.Supp. 568. See also Article II, Section 1, Constitution of the Commonwealth of Puerto Rico, Title 3, Rules and Regulations of the Commonwealth of Puerto Rico, Section 647–221.

■ It has also been held that a public employee cannot be deprived of an interest encompassed in the Fourteenth Amendment's protection of liberty or property without procedural due process. Whenever protected interests are implicated,[10] the right to some kind of prior hearing is paramount. Board of Regents v. Roth, supra, 408 U.S. at 569–570, 92 S.Ct. 2701. See also Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center, supra, 356 F.Supp. at 509.

■ While we are aware of plaintiff's First Amendment challenges to the actions of the defendants, we are of the opinion that his Fourteenth Amendment's procedural due process challenges are dispositive. It is the opinion of this Court that sufficient protected interests are implicated in this cause and that plaintiff has secured a sufficient interest in specific benefits that must be safeguarded by the Fourteenth Amendment procedural protection of property, Board of Regents v. Roth, supra; Perry v. Sindermann, supra.

We are of the opinion that the term of plaintiff's appointment, as it appears from the evidence in record, secured an interest in continued public employment, as Executive Director IV, which constitutes a property interest sufficient to require the defendants to give him a hearing when they dealt with the matter of a possible change of his status in his civil service career from competitive to noncompetitive, as well as when they dealt with the termination of his employment as Executive Director IV with functions of Assistant Secretary of Administration; all after a career of public service for twenty-nine years. Plaintiff's legitimate reliance upon the assurances made to him by the former Secretary of Social Services that his recruitment into said department could be made without impairing his status in the competitive service, and at a higher

---

10. In considering the merits of plaintiff's procedural due process arguments, we must first determine whether due process protections apply to the situation at bar. The relevant inquiry is whether plaintiff's interests affected here, are within the concepts of "liberty" or "property" protected by the due process clause. Board of Regents v. Roth, supra, 408 U.S. at 571, 92 S.Ct. 2701; Perry v. Sindermann, supra, 408 U.S. at 599–603, 92 S.Ct. 2694; Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971). Cf. Marin v. University of Puerto Rico (Marin II) (D.C.P.R.1973), 377 F.Supp. 613.

salary than the one he was earning in the Department of Labor of the Commonwealth of Puerto Rico, gives substance to his claim of a property interest appropriate for a constitutional protection. It could be that the mutual understanding reached by the plaintiff and the former Secretary of Social Services with respect to his appointment may serve to support his claim of entitlement to the competitive classification he was formally granted on October 27, 1971; by the former Director of Personnel of the Commonwealth of Puerto Rico.

■ Furthermore, plaintiff's eligibility, in view of his continuous public service of twenty-nine years, to a merit pension by March 1974, is a substantial property interest that is entitled to the procedural due process protection before such entitlement is affected in any way. Pursuant to the Commonwealth of Puerto Rico's Retirement System, as amended, Title 3, Laws of Puerto Rico Annotated, Section 761 et seq., plaintiff will be eligible to a merit pension in March 1974 of approximately $1,047.00 per month for life. On said date, plaintiff will have completed thirty years of service in accordance with Act No. 19 of April 26, 1972, granting employees with thirty years of creditable service the option, theretofore inexistent, to retire from service regardless of age. Should plaintiff be terminated in his employment prior to March 1974, he would not be eligible to receive any annuity payment whatsoever for several years.

■ Likewise, plaintiff has an interest in avoiding damage to his professional reputation as a capable administrator in the position of Executive Director IV. The circumstances of his firing may stigmatize him, when he is about to finish a public service career of almost thirty years.

■ It is the opinion of this Court that plaintiff, before his status as a government employee could be changed and

his employment in the position of Executive Director IV terminated, under the factual circumstances of this cause, was entitled to "an opportunity to prove the legitimacy of his claim of such entitlement", Perry v. Sindermann, supra, 408 U.S. at 603, 92 S.Ct. at 2700. See also Johnson v. Fraley (4 Cir. 1972), 470 F.2d 179. *The presence of plaintiff's property interest obligates defendants to grant him a hearing, at his request, where he could be informed of the grounds for his proposed change in status and non retention in the position and challenge their sufficiency.* Hostrop v. Board of Junior College, District No. 515, etc. (7 Cir. 1972), 471 F.2d 488. The mere existence of such property interest does not, of course, entitle him to his claim over the position and the pension.

It must be borne in mind that plaintiff has always been a career employee in the Competitive Service of the Government of the Commonwealth of Puerto Rico. Except for the period from September 16, 1970, to October 27, 1971, he unequivocally maintained a competitive service status. The short period that he did not, technically speaking, have competitive service status as alleged by defendants, was satisfactorily explained. It could very well be that he is entitled to be considered as in the competitive service for said period.

Pursuant to the Personnel Act, Title 3, Laws of Puerto Rico Annotated, Section 671, "regular officials and employees in the competitive service may be removed only for just cause, and upon the preferment of charges.[11]" Section 671(c) further declares that "The Director may remove from office *any official or employee in the competitive service, when, after such employee has been notified and given an opportunity to be heard,* it should be found that his appointment was illegal . . ." Also relevant to the issue is Rule 9(c) of

---

11. The statute further grants the right to a hearing to employees in the competitive service before the Personnel Board if an appeal is taken within ten days from notification of the removal from office.

the Rules of Personnel, 3 Rules and Regulations 647–13(c), providing that:

> Any regular employee who in accord with the requirements established in subsection (a) of this section, was transferred from any position in the competitive service to another position in the non-competitive service may be transferred again to the competitive service if he had served uninterruptedly in the non-competitive service from the date at which the first transfer was made. The new transfer to the competitive service may be made, through such tests as the Director may determine, to the position originally held by said employee, or to any other similar position, or to any position similar in category to that which he held in the non-competitive service."

Under the foregoing provision, plaintiff may be entitled to be reinstated into his competitive service status. The fact that Section 8(d) was used, and that it could be argued that it constituted a technical mistake, may not necessarily mean that plaintiff's inclusion in the competitive service was illegal, since, as shown above, there exists statutory basis authorizing his inclusion in the competitive service. Accordingly, it is not necessary to rule as to whether plaintiff ever was in the non-competitive service during the 13-month period in view of the formal agreement entered into that he was to occupy his position in the Department of Social Services in a competitive service basis. Likewise, the Court finds unnecessary to rule as to whether all employees at the Social Services Department, with the exception of the Secretary and under Secretary, are in the competitive service by virtue of the provisions of Act No. 171 of 1968, establishing said Department. Had plaintiff been afforded a hearing, all the above circumstances could have been shown.[12]

 It should be noted that plaintiff was summarily and without prior notice or hearing, transferred from a competitive position to a non-competitive one.[13] This action was immediately followed by termination in his employment without any reason therefor.[14] It should be pointed out that plaintiff was also terminated while on sick leave and in violation of Commonwealth case law to the point. Gonzalo Lebrón Sotomayor v. Personnel Board, Bar Association Slip 1971–87; Luis Hernández Carrasquillo v. Labor Department, Personnel Board 1973–9, Case Q–71–19, (Opinion dated February 2, 1973).[15]

 Having the Court determined that under the circumstances of this cause plaintiff is entitled to procedural due process, it is proper that we determine what procedural protection is due. Marin v. University of Puerto Rico, supra, 377 F.Supp. at 621. What standards of due process are applicable (what formality and procedural requirements for a hearing—Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113) depends upon the nature of the interests affected and the circumstances of the deprivation, Morrissey v. Brewer, supra, 408 U.S. at 481, 92 S.Ct. 2593; Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Cf. Marin v. University of Puerto Rico, supra, or the nature of the subsequent proceedings. Boddie v. Connecticut, supra, 401 U.S. at 378, 91 S.Ct. 780. The precise requirements of procedural due process are of necessity flexible and must be tailored to the circum-

12. At said hearing it may very well appear that defendants' action violates Title 3, L.P. R.A., Section 671(c).

13. Employees in non-competitive positions are not entitled to a hearing upon termination unless they are charged with a wrongdoing absent, of course, an illegal motivation. Arcelay v. Police Superintendent, 95 D.P.R. 205 (1967).

14. It is obvious that this was done to prevent plaintiff from resorting to the Personnel Board, which ordinarily does not have jurisdiction over non-competitive status employees.

15. An attempt to cure this unlawful action was made by subsequently changing plaintiff's termination date to take effect following expiration of his sick leave.

stances of each case or class of cases. Cafeteria & Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). See also Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center, supra. But it is firmly established that the constitutional requirement of opportunity for some form of hearing before deprivation of a protected interest does not depend upon such a narrow balancing process, Board of Regents v. Roth, supra, note 8, for when a state seeks to terminate a protected interest, it must afford " 'notice and opportunity for hearing appropriate to the nature of the case' before[16] termination becomes effective." Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90; Board of Regents v. Roth, supra, note 7.

In view of our present disposition, we find it unnecessary to pass upon plaintiff's assertions with respect to violations of his First Amendment's rights.

Likewise, as agreed at the time of hearing, this Court, at this time, will not make any determination as to plaintiff's entitlement to damages.

This Court is mindful of the importance of the administration of the public civil service system in the Commonwealth of Puerto Rico and the need to maintain the public trust in the civil service. Likewise, we are mindful that the legal framework provided in the Personnel Act of the Commonwealth of Puerto Rico represents the most effective guarantee of selective and efficient public service and helps in the materialization of the public policy that contemplates a system of merit as the motivating factor for civil service. Notwithstanding, we are of the opinion that when we are confronted with a career public employee's expectancy of continued employment as in the case at bar, vis-a-vis the exercise of the duties and powers of the Director of Personnel, as she interprets the applicable laws and regulations, this Court is bound to balance the equities involved. We must bear in mind that plaintiff's classification as Executive Office IV in the Competitive Service, made on October 27, 1971, was the result of actions carried out by two high level government officials, the then Secretary of Social Services and the then Director of Personnel, as they understood the law to be.

In view of the foregoing, the Court finds that plaintiff's rights to procedural due process secured to him by the Fourteenth Amendment to the Constitution of the United States have been violated by the defendants. Accordingly, it is the opinion of this Court that plaintiff's termination of employment violated his constitutional rights and that, therefore, he is entitled to have the defendants, their agents, employees and those acting in concert with them, enjoined and restrained from changing or modifying his status in the competitive service of the Commonwealth of Puerto Rico or from decreasing his salary, or terminating his employment in the Department of Social Services; and to have the defendants reinstate him, with all his rights to his position of Executive Director IV at the Social Treatment Center or to any other substantially equivalent position without a decrease in salary, including back pay.

A judgment will be entered accordingly.

It is so ordered.

## JUDGMENT

The Court having today entered its Findings of Fact and Conclusions of Law in this cause, hereby

Orders, adjudges and decrees, that plaintiff's constitutional rights to procedural due process have been violated by the defendants; and it further

Orders, adjudges and decrees, that plaintiff is entitled to have defendants, their agents, employees and those acting

16. For some forms of adequate hearing see e. g. Hostrop v. Board of Junior College, District No. 515, etc., supra, 471 F.2d at 494; Marin v. University of Puerto Rico (Marin II) (D.C.P.R.1973), 377 F.Supp. 613, at 623.

in concert with them, enjoined and restrained from changing or modifying plaintiff's status in the Competitive Service of the Commonwealth of Puerto Rico, or from decreasing his salary, or terminating his employment in the Department of Social Services; and it is further

Ordered, that plaintiff be reinstated with all his rights, in the position of Executive Director IV at the Social Treatment Center or in any substantially equivalent position, without a decrease in salary, including back pay.

It is so ordered.

## ON MOTION FOR RECONSIDERATION

This cause came on to be heard on January 29, 1974, on defendant's motion for reconsideration of the judgment entered herein on November 15, 1973; plaintiff's opposition thereto, and plaintiff's motion for allowance of attorney's fees.

### I

Plaintiff challenged the jurisdiction of this Court to entertain defendants' motion for reconsideration, on the ground that it was served in excess of the ten-day limit provided for by Rule 59(e) of the Federal Rules of Civil Procedure.

Defendants filed on November 28, and served plaintiff on November 30, 1974, a motion seeking reconsideration of the Findings of Fact and Conclusions of Law and Judgment entered by the Court on November 15, 1973. Rule 59(e) states that a motion to alter or amend the judgment shall be served not later than 10 days after entry of judgment. Defendants' motion for reconsideration was untimely, as it was served 15 days after entry of judgment and filed 13 days after said entry. Consequently, this Court lacks jurisdiction to entertain defendants' motion for reconsideration and the same is hereby denied. See Jusino v. Morales & Tio, 139 F.2d 946 (1 Cir. 1944); Flint v. Howard, 464 F.2d 1084 (1 Cir. 1972); see also Sonnenblick-Goldman Corp. v. Nowalk (3 Cir. 1970), 420 F.2d 858.

### II

In relation to plaintiff's motion for attorney's fees, this Court is of the opinion that the same should be granted.

The awarding of attorney's fees in a civil rights litigation under Section 1983 of Title 42, like this cause, is within the discretion of the Court. In exercising our discretion we are merely providing full relief to the prevailing party. Monroe v. Bd. of Commissioners of City of Jackson, Tennessee (6 Cir. 1972), 453 F.2d 259.

This Court's exercise of discretion is motivated by the unreasonable and obstinate conduct of the defendants. It is the rule that where the actions of a defendant are obstinate, the Court entertaining a civil rights litigation, may in its discretion award attorney's fees. Rainey v. Jackson State College (5 Cir. 1973), 481 F.2d 347; N.A.A.C.P. v. Allen (D.C.Ala.1972), 340 F.Supp. 703. The Court of Appeals for the First Circuit has found a conduct to be obstinate when on the entire case, or a particular issue, a party, has with regard to an issue of law or fact, unreasonably held to a position. Pan American World Airways, Inc. v. Ramos, 357 F.2d 341, 342 (1966).

It is our opinion that the findings of fact entered by this Court in this case, as well as the whole record before the Court, demonstrate that defendant incurred in unreasonable and obstinate conduct.

In view of defendant's obstinacy, the work entailed by the issues presented and argued before the Court, the time and effort spent by plaintiff's attorney, Cabrera v. Municipality of Bayamon, 370 F.Supp. 859 (D.C., 1974), the testimonial evidence brought forth to establish the value of plaintiff's attorney's fees, the amount in controversy, the need for this equity relief, as well as any and all other applicable factors recently considered by the Court of Appeals for the

Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1971),[1] this Court hereby awards the sum of $6,000.00 as attorney's fees, to be paid by defendants jointly.

In granting this motion for attorney's fees, we are not establishing as a rule that we will always exercise our discretion in cases of this nature, to grant attorney's fees to a prevailing party. Our disposition is deeply moved by what the entire record reveals in relation to defendants' conduct in this cause.

It is so ordered.

## ON MOTION TO AMEND OR SET ASIDE

On November 26, 1973, plaintiff filed a motion for attorney's fees which this Court granted on April 4, 1974. On April 11, 1974, defendants filed a motion to amend and/or set aside its Order entered on April 4, 1974, insofar as it awards plaintiff the sum of $6,000 as attorney's fees, to be paid by defendants jointly.

The grounds on which defendants' motion rest are the following:

I. Attorney's fees are not permissible in suits brought under Title 42, United States Code, Section 1983, in absence of statutory authorization.

 We disagree. Although American courts historically have not awarded attorney's fees to successful litigants without explicit statutory or contractual authority, Federal courts have equitable power, in the absence of legislation to award attorney's fees in the interest of justice. Accordingly, even though Section 1983, Title 42, United States Code, does not explicitly authorize an award of attorney's fees, the court's equitable power may be invoked to make such an award in appropriate cases. Bradenburger v. Reighard (9 Cir. 1974), 494 F.2d 885.

On this ground, defendants say that there have been no actions brought similar to actions under other civil rights sections or statutes where courts have awarded attorney's fees. We disagree. The following are cases brought under Section 1983, supra, where the courts have awarded attorney's fees. See Hoitt v. Viter (1 Cir. 1974), 495 F.2d 219; Stolberg v. Members of Board of Trustees for State College of Connecticut (2 Cir. 1973), 474 F.2d 485; Branderburger v. Reighard, supra.

II. The award would amount to a money judgment against the Commonwealth of Puerto Rico.

On this ground, defendants rest on the recent decision of the United States Supreme Court, Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, 1974.

Edelman v. Jordan, supra, was a class action brought looking for declaratory and injunctive relief against the Illinois officials administering the federal-state program of Aid to the Aged, Blind and Disabled (AABD), which are funded equally by the State and Federal Governments, contending that they were violating federal law and denying equal protection of the laws by following state regulations that did not comply with the federal time limits within which partici-

---

1. In Johnson, the court deemed relevant factors in determining whether to give attorney's fees under Title VII of 42 U.S.C., Section 2000e–5(k) (civil rights legislation dealing with equal employment opportunities), the following: 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and, 12) awards in similar cases. This Court wholeheartedly agrees with the Johnson's approach in determining the reasonable value of attorney's fees in civil rights cases; and intends to follow the same, everytime we deem that they should be granted in civil rights cases. The Johnson approach, in our opinion, is not limited to cases under Title VII, 42 U.S.C., Section 2000e–5(k).

pating states had to process and make grants with respect to AABD applications. The District Court by a permanent injunction required compliance with the federal time limits and ordered the state officials to release and submit AABD benefits wrongfully withheld to all persons found eligible who had applied between July 1, 1968 and April 16, 1971. The Court of Appeals affirmed rejecting the state's officials contention that the Eleventh Amendment barred the award of retroactive benefits.

The Supreme Court revised and held that the Eleventh Amendment of the Constitution of the United States bars a suit by private parties seeking to impose a liability payable from public funds if the state does not consent to suit.

A reading of Edelman v. Jordan, supra, clearly shows that the action filed in the United States District Court for the Northern District of Illinois, sought retroactive payments from public funds.

The Court stated at page 665 of 415 U.S., at page 1357 of 94 S.Ct., the following:

> "We agree with Judge McGowan's observation. The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself . . . than it does the prospective injunctive relief awarded in Ex Parte Young." The Court had stated on a preceding paragraph:

> "These funds will obviously not be paid out of the pocket of petitioner Edelman."

The Eleventh Amendment to the Constitution of the United States provides:

> "The judicial power of the United States shall not be construed to extend to any suit in law and equity, commenced or prosecuted against one of the United States by citizens of another State . . ."

In the recent decision of Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, 1974, the Supreme Court addressing the issue of the Eleventh Amendment immunity, stated the following:

> "It is well-established that the Amendment bars suits not only against the State when it is the named party but when it is the party in fact. Edelman v. Jordan, [supra]; Poindexter v. Greenhow, 114 U.S. 270, 287, [5 S.Ct. 903, 912, 29 L.Ed. 185] (1884); Cunningham v. Macon and Brunswick R. Co., 109 U.S. 446, [3 S. Ct. 292, 27 L.Ed. 992] (1883). Its applicability 'is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record.' Ex parte New York, 256 U.S. 490, 500, [41 S.Ct. 588, 990, 65 L.Ed. 1057] (1921).

> However, since Ex Parte Young, 209 U.S. 123, [28 S.Ct. 441, 52 L.Ed. 714] (1907), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. Ex Parte Young, [supra], teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

> 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his *individual conduct*. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' 209 U.S. at 159–160, [28 S.Ct. 441 at 454] (emphasis added).

> . . . . . .

> "While it is clear that the doctrine of Ex parte Young, [supra], is of no aid to a plaintiff seeking damages from the public treasury, Edelman v. Jordan, [supra]; Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, [66 S.Ct. 745, 90 L.Ed. 862] (1946), . . . damages against *individual* defendants are a permissi-

ble remedy in some circumstances notwithstanding the fact that they hold public office. Myers v. Anderson, 238 U.S. 368, [35 S.Ct. 932, 59 L.Ed. 1349] (1915)."

In this case the Supreme Court also decided that the immunity of officers of the executive branch of a state government for their acts is not absolute but qualified and of varying degree, depending upon the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken.

At page 239 of 416 U.S., at page 1688 of 94 S.Ct., the Scheuer v. Rhodes decision, the Court stated:

" . . . While the latter doctrine —that the "King could do no wrong" —did not protect all government officers from personal liability, the common law soon recognized the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability. This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of *bad faith*, of subjecting to liability an officer who is required, by the legal obligation of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good."

■ We believe that in exercising the functions of his office, the head of an Executive Department, should not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1926). However, public officials, whether Governors, Mayors, or police, legislators or judges who fail to make decisions when they are needed or who do not act to implement decisions when they are made, do not fully and faithfully perform the duties of their offices. Scheuer v. Rhodes, supra.

■ An award of attorney's fees assessed against a state official acting in his official capacity is not barred by the Eleventh Amendment. Brandenburger v. Reighard, supra.

■ Since the statute which is the basis of this case does not provide for the awarding of fees, we must consider whether this case falls within a judge created exception to the American rule that attorney's fees are not ordinarily recoverable as costs absent an express statutory authorization. La Raza Unida v. Volpe, 57 F.R.D. 94 (D.C.1972).

■ The basic issue is whether plaintiff has demonstrated that equity compels the awarding of fees in this case. The judge created exceptions to the American rule are the following:

I. The common fund situation.

■ Here, the courts use their equitable powers to insure that the beneficiaries of litigation are the ones who share the expense. This is a defensive use of the equitable power of the courts to prevent the unjust enrichment of "free riders". Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). In this case the Supreme Court held that attorney's fees can be awarded when the judgment results in a "common fund" for the plaintiff's or for the class. That is to say, when the plaintiff's efforts result in substantial benefits to others. These "free riders"—those who receive significant benefits without paying for them —should compensate the plaintiffs for the benefits the latter has conferred upon them.

II. Private Attorney General Situation.

■ Whenever there is nothing in a statutory scheme which might be interpreted as precluding it, a private attorney general should be awarded attorney's fees when he has effectuated a strong congressional policy which has

benefited a large class of people, and where further the necessity and financial burden of private enforcement are such as to make the award essential. Lee v. Southern Homes Sites Corp., 444 F.2d 143 (5 Cir. 1971); NAACP v. Allen (M.D.Ala.1972), 340 F.Supp. 703.

III. The obdurate behavior situation.

Here, the courts use their equitable powers to impose cost on defendants who behaved in bad faith. Knight v. Auciello (1 Cir. 1972), 453 F.2d 852; Kahan v. Rosenstiel (3 Cir. 1970), 424 F.2d 161, 167.

 A federal court may award counsel fees to a successful party when his opponent has acted in *bad faith*, vexatiously, wantonly or for oppressive reasons. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972); 6 J. Moore, Federal Practice, 54.77[2], p. 1709 (2 ed. 1972); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1960); Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Bell v. School Board of Powhatan County (4 Cir. 1963), 321 F.2d 494.

In Stolberg v. Members of Board of Trustees for State College of Connecticut, supra, 474 F.2d at page 490, the Court stated:

"Although the award of attorney's fees is restricted to the exceptional case, . . . Bell v. School Board [of Powhatan County], [supra], the standard is whether 'bringing of the action should have been unnecessary and was compelled by the school board's unreasonable obdurate obstinacy.' "

 A determination of obstinacy falls within the discretionary powers of the trial court. Marston v. American Employers Insurance Company (1 Cir. 1971), 439 F.2d 1035. In determining whether a party was stubbornly litigious, the trial court must weigh such factors as the sincerity with which a party put forth an issue, the genuineness of the legal and factual issues raised, and whether a party was unduly dilatory in the prosecution of its case. Cabassa v. American Union Transport, 58 F.R.D. 200, 205 (D.C.1973).

At page 206, the Court in Cabassa v. American Union Transport, supra, stated:

"In fixing the amount to be awarded for attorney's fees the [trial] Court must take into consideration the degree of obstinacy, the unnecessary trouble, inconvenience and expense that had to be taken to overcome the obstinacy, the nature of the litigation, the questions involved, the amount in controversy, the duration of the trial, the expense and inconvenience imposed upon the attorneys for all parties, as well as their professional standing within the community. Heirs of Tias v. Porto Rico Leaf Tobacco Co., 59 P.R.R. 228 (1941); Prado v. Quinones, 71 P.R.R. 309 (1955)."

Because this suit was compelled by defendants' conduct, counsel fees should have been awarded. Wherefore, defendants' motion to alter or set aside our previous order is hereby denied.

It is so ordered.