OPINION TO THE HOUSE OF REPRESENTATIVES.

APRIL 23, 1953.

ADVISORY OPINION to house of representatives in answer to questions relating to right of city or town to provide in home rule charter for conduct of general municipal elections.

April 23, 1953

To the Honorable, the House of Representatives
    of the State of Rhode Island and
        Providence Plantations

We have received from the honorable house of representatives a resolution requesting, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon certain questions of law. These questions are stated as follows:

"1. Are provisions for non-partisan nominations or elections or elections by ballots bearing no party designations in a charter duly adopted by the qualified electors of a city in accordance with the provisions of Article XXVIII of the Amendments to the Constitution, in conflict with, repugnant to, or inconsistent with the provisions of Section 4 of said Article XXVIII of the Amendments to the Constitution reserving to the General Assembly the power to legislate in matters not affecting the form of government of any city?

2. Are provisions for non-partisan nominations or elections or elections by ballots bearing no party designations in a duly adopted charter in conflict with the provisions of Section 7 of Article XXIX of the Amendments to the Constitution providing that the General Assembly shall have full power to prescribe the manner of conducting elections?

3. If either or both of the above questions are answered in the affirmative, and such charter provides that if any part thereof is held to be unconstitutional, it shall not affect the validity of the remainder, are nomination and elections in the city adopting the charter to be made and held in accordance with the law applicable prior to the adoption of the charter?

4. Are provisions for non-partisan nominations and elections or elections by ballots bearing no party designations in a duly adopted charter in conflict with, repugnant to, or inconsistent with the provisions of Chapter 2100 of the Public Laws, 1948, and Chapter 2476 of the Public Laws, 1950, providing for party nominations and partisan elections?

5. If question 4 is answered in the affirmative should nominations be made and elections be held in accordance with the provisions of the charter or in accordance with Chapter 2100 and Chapter 2476 of the Public Laws?

6. If a duly adopted charter provides for holding municipal general elections at times other than those fixed by acts of the General Assembly applicable to that city, is such charter provision in violation of or inconsistent with the provisions of Section 4 of Article XXVIII of the amendments to the Constitution reserving to the General Assembly the power to legislate in matters not affecting the form of government of any city?

7. If a duly adopted charter provides for holding municipal general elections at times other than those fixed by acts of the General Assembly applicable to that city, is it in violation of or inconsistent with Section 7 of Article XXIX of the Amendments to the Constitution providing that the General Assembly shall have full power to prescribe the manner of conducting elections?

8. If either question 6 or question 7 or both of them are answered in the affirmative, and such charter provides that if any part thereof is held to be unconstitutional, it shall not affect the validity of the remainder,

are municipal elections in such city to be held in accordance with the other provisions of the charter but at the times fixed by acts of the General Assembly or are such elections to be held entirely in accordance with the law applicable to such municipal elections prior to the adoption of the charter?

9. Are provisions in a duly adopted charter fixing times for holding municipal general elections other than the times fixed by acts of the General Assembly for such elections in that city in conflict [with] said acts of the General Assembly fixing times for holding such municipal elections?

10. If question 9 is answered in the affirmative should municipal general elections in that city be held at the times fixed in the acts of the General Assembly?

11. Are provisions in a duly adopted charter requiring nomination papers for a candidate for a municipal office to be signed by a specified number of qualified voters inconsistent with the provisions of Section 4 of Article XXVIII of the Amendments to the Constitution reserving to the General Assembly the power to legislate in matters not affecting the form of government of any city?

12. Are provisions in a duly adopted charter requiring nomination papers to be signed by a specified number of qualified voters inconsistent with Section 7 of Article XXIX of the Amendments to the Constitution providing that the General Assembly shall have full power to prescribe the manner of conducting elections?

13. If the provisions of a duly adopted charter require nomination papers for a candidate for a municipal office to be signed by a specified number of qualified voters in excess of the number prescribed by sections 8 and 10 of Chapter 317 of the General Laws, 1938, do the provisions of such charter govern the number of signatures required or do the provisions of Chapter 317 of the General Laws govern the number of signatures required?

14. Are provisions in a duly adopted charter prescribing criminal penalties for violation of prohibitions

in said charter in conflict with the provisions of Section 4 of Article XXVIII of the Amendments to the Constitution reserving in the General Assembly the power to legislate in matters not affecting the form of government of any city?

15. Are provisions in a duly adopted charter prohibiting a resident of that city holding office in or being employed by the State or Federal government, except notaries public and members of the militia or armed forces, from making any contract with the city or sharing in the profits of any person or corporation making any contract with the city in conflict with the provisions of

(a) Section 4 of Article XXVIII of the Amendments to the Constitution reserving to the General Assembly the power to legislate in matters not affecting the form of government of any city?

(b) the privileges and immunities clause of Article XIV of the Amendments to the Constitution of the United States?

(c) the due process of law clause of Article XIV of the Amendment to the Constitution of the United States?

(d) the equal protection of the laws clause of Article XIV of the Amendments to the Constitution of the United States?

(e) the provision in Section 2 of Article I of the State Constitution that all laws must be made for the good of the whole people?"

The first thirteen questions may be divided into groups which refer to the same subject matter. Questions 1, 2, 3, 4 and 5 relate to the validity of a requirement in a home rule charter of a city or town providing for nonpartisan nominations and elections. Questions 6, 7, 8, 9 and 10 relate to the validity of a provision in such a charter fixing the time or times for holding a municipal general election. Questions 11, 12 and 13 relate to the validity of a provision in a home rule charter specifying the number of signatures

of qualified voters required on the nomination papers of a candidate for municipal office.

Despite the form in which they are phrased, all thirteen questions really raise only one fundamental issue, namely: Are provisions in a home rule charter prescribing nonpartisan nominations and elections, fixing the time for holding elections, and specifying the number of signatures required on nomination papers constitutionally valid by virtue of article XXVIII of amendments, the so-called home rule amendment, or are they unconstitutional invasions of the full power over elections as expressly vested in the general assembly by section 7 of article XXIX of amendments?

Since receiving your request we have given these questions long and serious study, even to the extent of taking time from the consideration of a lengthy list of litigated cases which have been heard and are awaiting our determination. Realizing, however, that your honorable body may desire to consider, before adjournment of the present session of the general assembly, legislation with reference to the subject matters of these questions, we have deemed it wise to forego further deliberation and to give you now our conclusions on the constitutional issue underlying the questions.

We are clearly of the opinion that in article XXVIII of amendments there is no constitutional warrant for home rule charters to prescribe nonpartisan nominations and elections, or to fix the time of general municipal elections, or to specify the number of signatures of qualified voters required on nomination papers of a candidate for municipal office, because each of those matters pertains to the conduct of the elections. Nowhere in that article is there any language that authorizes, expressly or by necessary implication, a city or town to provide by charter how general municipal elections shall be conducted. On the other hand section 7 of article XXIX of amendments expressly vests such power in the general assembly as follows: "The general

assembly shall have full power to prescribe the manner of conducting the elections, the form of certificates, the nature of the evidence to be required in case of a dispute as to the right of any person to vote, and generally to enact all laws necessary to carry this article into effect, and to prevent abuse, corruption and fraud in voting."

That section as far as the elections are concerned is a reenactment, word for word, of section 6 of article II of the constitution under which the general assembly has exclusively exercised such power since the adoption of the constitution in 1843. Moreover, even before that time the general assembly, at least since the royal charter of 1663, was vested with such authority not only over the elections of the state at large but also over the elections in the several towns. See *In re Warwick Financial Council*, 39 R. I. 1, *City of Newport* v. *Horton*, 22 R. I. 196, and *In re Narragansett Election*, 16 R. I. 761. This long history of the general assembly's exclusive authority over the conduct of elections, which was expressly reaffirmed by article XXIX of amendments, negatives any implication that article XXVIII of amendments granted to the electors of a city or town the power to provide in a home rule charter for the conduct of a municipal general election. Therefore we would not be justified in concluding that the mere provisions of such a charter could legally supplant the general election laws enacted by the general assembly.

In that connection the indisputable fact is that the home rule amendment, by reason of the circumstances in which it was proposed and ratified, tends to confirm the historic power of the general assembly over elections. That amendment and article XXIX of amendments were proposed by the constitutional convention of 1951 to the people on the same day, June 28, 1951. The members of the convention were in large part members of the general assembly that called the convention. It is hardly probable that the convention in proposing article XXVIII of amendments, the

home rule amendment, intended to diminish in any way the general assembly's exclusive power over the conduct of elections. Certainly it did not expressly so provide. Nor did it, in our opinion, intend that such power be implied, especially since it expressly provided on the same day in article XXIX of amendments that the general assembly should be vested with precisely the full power in that respect which it always had exercised exclusively by virtue of section 6 of article II of the constitution.

It is true that the convention provided in section 6 of article XXVIII of amendments that the legislative body of a city or town should prescribe the method for nominating and electing a charter commission whenever the required number of qualified electors of such city or town duly filed a petition for the adoption of a home rule charter. But that power was expressly limited to "the nomination and election of a charter commission." No reference to general elections of officers under such charter was made therein and none is required by implication. Indeed the amendment did not permit the charter commission or the local legislative body to fix the time of the election for the adoption of the charter proposed by the commission. On the contrary the convention in proposing the home rule amendment expressly fixed the time of such election in section 7 by providing for submission of the charter to the qualified electors of the municipality "at the general election next succeeding thirty days from the date of the submission of the charter by the charter commission." Similarly section 8 seems to authorize a city or town to propose amendments at a special election, but again the power is restricted to amendments to the charter and does not relate to provisions for a general election of officers.

We think the convention thus showed that when it intended to provide for a departure from the customary constitutional mode of prescribing the conduct of elections it knew how to express such intention and did so clearly.

In our opinion its omission to vest in the qualified electors of a city or town the power to provide by charter for the conduct of local elections was intentional, because on the same day it had expressly provided for the continued exercise by the general assembly of the *full* power that it had hitherto exercised over elections.

In a previous opinion we answered a question as to the power of the general assembly to fix the time for holding a financial town meeting, *Opinion to the House of Representatives,* 79 R. I. 277, 87 A.2d 691. There we stated that the general assembly could do so by a general law, but that a special law for any particular town would require the approval of the qualified electors of such town. This, however, did not apply to the time for holding elections as distinguished from town meetings as that term is understood in this state. Had we been asked at that time a question specifically pertaining to general municipal elections, the extent of the general assembly's power under article XXIX, section 7, would necessarily have been involved. That provision, however, was not called to our attention by the particular question which was propounded at that time. Therefore, we had no occasion therein to refer to and consider the scope of such section as is necessary for us to do here. Hence that opinion and the instant opinion clearly deal with different subjects. In other words, a town meeting in this state is not a municipal general election.

For these reasons we answer each of the first thirteen questions by saying that all matters pertaining to the conduct of municipal general elections referred to in such questions are exclusively within the province of the general assembly and are subject to existing general laws. Of course if it chooses to do so it may by appropriate legislation validate any provision in a home rule charter which is inconsistent with this opinion. Such an act would be an exercise of the general assembly's plenary power over the

conduct of elections as it was reaffirmed by section 7 of article XXIX of amendments. However, to avoid the possibility of a contest over the legality of a municipal general election the general assembly should also provide in the act for the conduct of such election consistently with existing law; or else it should expressly provide by special act for all necessary procedures to be followed in the making of nominations for and the holding of a municipal general election in a particular city or town.

Questions 14 and 15 present a different problem. They relate to extremely important matters affecting individual rights and privileges. It is not clear to us from either question in just what manner the undescribed charter provisions bear upon such rights and privileges. However, it would appear from question 14 that some home rule charter provisions have invaded the province of the general assembly by declaring certain acts criminal and fixing the penalty therefor. But we cannot be sure of this because the question is not sufficiently specific.

Question 15 is somewhat more definite but it is nevertheless in such vague form that we are reluctant to render an opinion thereon, especially as it poses a problem of possible violation of federal constitutional guaranties in the fourteenth amendment as well as guaranties in the declaration of rights in our state constitution. In the particular circumstances it would be preferable to await an actual attack upon such provisions in a litigated case. Our determination on the points at issue in such a case would be not merely an advisory opinion as here, but would have the full force and effect of a decision that would operate directly upon the charter provisions in question, either sustaining them or striking them down as null and void. For these reasons we respectfully refrain from

expressing an opinion as to questions 14 and 15 in their present form.

Edmund W. Flynn
Antonio A. Capotosto
Hugh B. Baker
Francis B. Condon
Jeremiah E. O'Connell