**335 A.2d 334.**

BARBARA S. CHASE *et al. vs.* ROBERT F. BURNS, *Secretary of State et al.*

APRIL 11, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Barbara S. Chase and Janet C. Springer, vice president and secretary, respectively, of the League of Women Voters of the town of Cumberland, commenced this civil action in the Superior Court against the Secretary of State and the chairman of the State Board of Elections. They seek a declaration that P. L. 1974, ch. 277,[1] violates the tenth[2] and thirty-eighth[3] amendments to

---

[1]Public Laws 1974, ch. 277, §1, reads as follows:

"The electors of the town of Cumberland, on the first Tuesday next after the first Monday in November in the year 1974, and biennially thereafter, shall by ballot elect a town council consisting of five (5) members.

"The names of each candidate for the town council shall be numbered up to five (5) upon the ballot labels, and in counting the vote for each councilman, the places numbered (1 through 5) shall be considered as separate places. The candidates receiving the highest number of votes in each of the five separate places for said town council shall hold their respective offices for the term of two years."

[2]R. I. Const. amend. X, §1, provides:
"In all elections held by the people for state, city, town, ward or district officers, the person or candidate receiving the largest number of votes cast shall be declared elected."

[3]R. I. Const. amend. XXXVIII, §1, provides in pertinent part:
"Every citizen of the United States of the age of eighteen (18) years or over who has had his residence and home in this state for thirty (30) days next preceding the time of voting, who has resided thirty (30) days in the town or city from which he desires to vote, and whose name shall be registered at least thirty (30) days next preceding the time of voting as provided by law, *shall have the right to vote for all officers to be elected* and on all questions submitted to the electors * * *." (Emphasis added.)

the state constitution and the due process and equal protection clauses of the fourteenth amendment to the Federal Constitution. The contested enactment provides that starting in 1974, and biennially thereafter, the Cumberland electors shall elect a town council consisting of five members, that the names of the candidates shall be listed on the ballot by places numbered one through five, that in counting the vote each numbered place shall be treated separately, and that the candidate receiving the most votes in each of the five separate places shall be elected to a 2-year term. After a hearing without a jury, a judgment was entered declaring ch. 277 repugnant to both the tenth and thirty-eighth amendments and ordering, in substance, that ch. 277 not be applied to Cumberland town council candidates in the November 5, 1974 election. The defendants appealed.[4]

The case was heard on an agreed statement of facts, and because those facts include the contested application of ch. 277 by defendants our consideration is limited to that issue and does not reach the question of whether the challenged enactment is facially unconstitutional. The stipulated facts most relevant to our decision are that candidates for the Cumberland Town Council run for election at-large and, if elected, represent the entire town and no other area or political subdivision,[5] and that ch.

---

[4]The election of November 5, 1974 has passed, and the controversy insofar as it pertains thereto may be moot. Nonetheless, we entertain this appeal because plaintiffs seek a declaratory judgment in behalf of a class of voters who have a continuing interest in the underlying issue, which is capable of repetition and evading review. *Moore* v. *Ogilvie*, 394 U. S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1, 4 (1969); *Chernov Enterprises, Inc.* v. *Scuncio*, 107 R. I. 439, 440, 268 A.2d 424, 425 (1970).

[5]This system contrasts with the election of local officers by district, where a candidate from a particular district runs against other candidates from the same district, and if elected, represents that district in local government.

277 requires a candidate to designate the single position number after which he wishes to appear — e.g., first, second, third, fourth or fifth councilman — and also has the effect both by mechanical device and legislative direction, of limiting a voter's choice to only one of the two or more candidates whose names appear horizontally on the ballot for each numbered position.

The plaintiffs' position is that it is constitutionally invalid to "pair" candidates on the ballot in towns where the law requires those candidates to be elected "at-large" and makes no distinctions among the offices to be filled.[6] The trial justice agreed, reasoning that the pairing system cannot withstand constitutional scrutiny because it materially restricts a voter's freedom of choice and permits a candidate to lose in his designated position even though he receives more votes than a candidate elected in another position.

By way of illustration the trial justice noted that once a voter chooses between the two or more candidates listed horizontally after the position labeled "number one" or "first councilman," the voting machine lever for that horizontal line locks, making it impossible to vote for the remaining candidate(s) on that line even though the voter might prefer that candidate(s) to some or all of the candidates listed in places numbered two through five. He observed further that a similar dilution of choice occurs when a voter makes his selection in each subsequent numbered row, until for position number five the elector

---

[6]In 1972 the pairing of candidates for the Cumberland Town Council was successfully challenged in the Superior Court, and on appeal this court, without discussing the merits, ordered that candidates for the town council not be listed by seat numbers, that voters be advised that they might vote for any five of the council candidates, and that the levers on the voting machines be unlocked to permit the voters to vote for two or more candidates whose names appeared on the same horizontal line. *Plasse v. LaFrance,* 110 R. I. 942, 295 A.2d 433 (1972).

is required to choose between two candidates both of whom might be less preferable than some or conceivably all the candidates eliminated by his previous selections. This reduction of voter choice, he continued, is further aggravated whenever third-party candidates are involved, because then the selection of one candidate for a single numbered place necessarily eliminates the additional candidate listed in that horizontal line.

Finally, the trial justice hypothesized an election involving only seven candidates, two of whom declare for position number one, two for position number two, and the remaining three for the positions numbered three, four and five, respectively. He then observed that the candidates for positions numbered three to five inclusive would be elected by default even if a majority of the electors preferred the losing candidates paired for positions numbered one and two, and that the voters would thus be "prevented from selecting the five 'best' candidates of the seven seeking office."

The defendants do not dispute that these are the effects of the Cumberland pairing procedure. Instead, they contend that in enacting ch. 277 the Legislature lawfully exercised the authority conferred by section 2 of the thirty-eighth amendment vesting it with the general power to provide by law "for the time, manner and place of conducting elections." This grant of power, they argue, is sufficiently broad to permit the Legislature to create five individual and separate positions out of the five at-large council seats, though the functions and constituencies of those councilmen elected are indistinguishable. Finally, they say that the prescribed pairing, admittedly having the effects complained of by plaintiffs, does not unduly limit an elector's choice because it is "no different from restricting a voter to one choice for governor," and that it does not violate the tenth amendment to the state

490

constitution because the candidate with the most votes for each numbered position is declared elected.

In seeking to resolve these differences between the parties, we are mindful that the thirty-eighth amendment to the constitution is a recent enactment, which since its adoption in 1973 has not been the subject of litigation before this court. Those of its provisions now in issue, however, are so similar in form and substance to predecessor provisions that the opinions of the justices of this court concerning those earlier amendments are relevant here and influence our decision in this case.

Those opinions acknowledge that the General Assembly has been vested with the exclusive authority over local and state elections since the time the colony was governed by the Royal Charter of 1663. *Opinion to the House of Representatives,* 80 R. I. 288, 293-94, 96 A.2d 627, 630 (1953).[7] They also say, however, that a properly qualified elector is entitled to vote for all elective officers within any political subdivision of the state and, further, that the General Assembly is powerless either to take away an elector's right to the full exercise of the elective franchise, *Opinion to the Governor,* 62 R. I. 316, 320, 6 A.2d 147, 149 (1939),[8] or to deny him the right to vote

---

[7] In *Opinion to the House of Representatives,* 80 R. I. 288, 294, 96 A.2d 627, 630 (1953), the justices considered the pertinent language of article XXIX of amendments, §7, which vested the General Assembly with "* * * full power to prescribe the manner of conducting the elections * * * and generally to enact all laws necessary to carry this article into effect * * *." The comparable provision in article XXXVIII of amendments, §2, gives the General Assembly power to provide by law "for the time, manner and place of conducting elections."

[8] In *Opinion to the Governor,* 62 R. I. 316, 6 A.2d 147 (1939), the issue was the constitutionality of a proposed system of proportional representation, which had the effect of limiting a Providence elector to but one effective vote for one councilman in an election of nine at-large council members. The justices said that the proposed system was repugnant to

for a candidate for every office to be filled, including councilmen to be elected at-large rather than by ward or district. *Id.* at 325, 6 A.2d at 151; *Opinion to the House of Representatives*, 21 R. I. 579, 580, 41 A. 1009 (1898).

Because we adhere to the reasoning that underlies those opinions, we conclude that when our constitution speaks of the right of qualified electors "to vote for all officers to be elected," it means in this context that the Legislature is not permitted to deny a qualified elector the right to vote for the candidate of his choice for every elective office to be filled. We are persuaded that the effects attributed to the pairing system by the parties, and amplified by the trial justice, cannot be reconciled with that constitutional requirement, and we therefore conclude that the contested operation of ch. 277 violates the provisions of the thirty-eighth amendment.

Moreover, logic requires that articles X and XXXVIII of amendments be read as corollaries, for if the underlying right to full elective choice were undermined, the tenth amendment's guarantee that the candidate receiving the largest number of votes shall be declared elected would also become meaningless. Accordingly, it follows that where the pairing of candidates under ch. 277 unjustifiably denies Cumberland voters their right to the full exercise of the franchise in council elections, votes cast under that pairing system cannot be relied upon to reflect the true wishes of the voters, and the substance of the tenth amendment is violated.

---

that portion of article XX of amendments, §1, which then guaranteed that every qualified elector "shall have a right to vote in the election of all civil officers and on all questions in all legally organized town, ward, or district meetings." The language "* * * shall have the right to vote for all officers to be elected and on all questions submitted to the electors * * *" was subsequently substituted in the thirty-eighth amendment for the quoted language from the earlier twentieth amendment.

. The defendants' appeal is denied and dismissed, the judgment appealed from affirmed, and the case is remitted to the Superior Court for further proceedings.

*James J. Mullen,* for plaintiffs.

*Richard J. Israel,* Attorney General, *George H. Egan,* Special Asst. Attorney General, *Maurice W. Hendel,* for defendants.