Elisa **DIAZ GONZALEZ** et al.,
**Defendants-Appellants,**

v.

Alfredo **COLON GONZALEZ,**
**Plaintiff-Appellee.**

**No. 75–1270.**

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1976.

Decided May 28, 1976.

Michael J. Henke, Washington, D. C., with whom Miriam Naveira de Rodon, Sol. Gen., Com. of Puerto Rico, Candita Orlandi, Asst. Sol. Gen., Com. of Puerto Rico, San Juan, P. R., Lynn R. Coleman, and Vinson, Elkins, Searls, Connally & Smith, Washington, D. C., were on briefs for defendants-appellants.

Hector M. Laffitte, Hato Rey, P. R., with whom Laffitte & Dominquez, Hato Rey, P. R., was on brief, for plaintiff-appellee.

* Of the Eighth Circuit, sitting by designation.

1. The facts are adequately set forth in the district court's Findings of Fact. 385 F.Supp. at 1230–34.

2. Defendants argue that the district court did not have jurisdiction because the Commonwealth of Puerto Rico is not a state or territory within the contemplation of 42 U.S.C. § 1983 (or its jurisdictional counterpart, 28 U.S.C. § 1343). We have rejected this theory, however, in *Ortiz v. Colon*, 511 F.2d 1080 (1st Cir.), *petition for cert. filed*, 43 U.S.L.W. 3677 (U.S. June 3, 1975). *See also Oppenheimer Mendez v. Acevedo*, 512 F.2d 1373 (1st Cir. 1975).

3. The injunction ordered the defendants not to change or modify plaintiff's "status in the competitive service of the Commonwealth of Puerto Rico or . . . [decrease] his salary or . . . [terminate] his employment in the Department of Social Services"; it also ordered

Before MATTHES,* McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

■ This is a difficult and complex case, which calls for the interpretation of certain Puerto Rican statutes and possibly for an "equitable" extension of their literal meaning. Although the factual background against which the legal questions must be resolved is exceedingly complicated,[1] an abridged summary will suffice here in the light of our ultimate disposition. Basically the district court was faced with an action brought under 42 U.S.C. § 1983 in which the plaintiff alleged a deprivation of civil rights by the defendants' wrongful termination of his employment in the Commonwealth's Department of Social Services.[2] Plaintiff sought both equitable relief and damages and succeeded in obtaining both as well as $6,000 in attorneys' fees. *Gonzalez v. Gonzalez*, 385 F.Supp. 1226 (D.P.R.1974).[3]

The court held that plaintiff's right to procedural due process was violated by defendants, and accordingly it sustained his § 1983 claim.[4] The factual predicate of the court's due process ruling was essentially the following:

"[P]laintiff was summarily and without prior notice or hearing, transferred from a competitive position to a non-competi-

his reinstatement to the position from which he had been removed or its equivalent and awarded him back pay. Since plaintiff subsequently retired voluntarily, the merits of the injunctive relief are now moot and we will not pass on them. We assume that whatever the ultimate outcome of this case is, plaintiff, having completed his required years of service, will not have his pension benefits affected.

In a subsequent phase, after a jury trial, a judgment was entered granting plaintiff $100,000 in compensatory damages and $150,000 in punitive damages. This aspect of the case is not officially reported.

4. The plaintiff had also challenged defendants' actions on first amendment grounds, alleging that his employment was wrongfully terminated because of his ideological and political beliefs. The district court, however, did not reach this issue, 385 F.Supp. at 1236, and plaintiff has not pursued it before this court.

tive one. This action was immediately followed by termination in his employment without any reason therefor," 385 F.Supp. at 1238 (footnotes omitted).[5]

Although this terse statement by the court might lead one to infer that defendant's action in "transferring" plaintiff from a competitive to a non-competitive position was utterly arbitrary, such was not the case nor did the district court ever directly so find.

Without deciding at this point whether defendants' actions were correct or not, we note that defendants have maintained at all times that their actions were taken in compliance with applicable Puerto Rican law; indeed, at one point the district court appears to have conceded as much:

"The evidence before this Court establishes that both defendants had direct participation in altering plaintiff's status as a career government employee . . . [and that both] acted pursuant to the provisions of the Personnel Act of the Commonwealth of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Section 641 et seq." 385 F.Supp. at 1235.[6]

The basic theory by which defendants have sought to explain their actions since the beginning is the following: the action of the Commonwealth's Director of Personnel on October 27, 1971 in classifying plaintiff's position (which had formerly been part of the non-competitive service) as part of the competitive service was not authorized by § 648(d) of Title 3, Laws of Puerto Rico Annotated—the statute under which the Director purported to act. Therefore, defendants assert, when they notified plaintiff in the Spring of 1973 that they considered him to be in the non-competitive service, they were in no sense transferring him from the competitive to the non-competitive service but simply recognizing that the October 1971 classification of plaintiff's position as part of the competitive service was illegal.[7]

For the force of this argument to be appreciated, it is necessary to recount in chronological order the principal events leading up to the present controversy:

(1) Prior to September 16, 1970, plaintiff was a regular employee of the Commonwealth's Department of Labor (since September 8, 1944) and was in the competitive service.

(2) On September 16, 1970, at the request of the then Secretary of Social Services, Efrain Santiago, Plaintiff, hav-

---

5. At all times relevant to this action, the Commonwealth's Personnel Act distinguished between the *exempt* service, the *non-competitive* service, and the *competitive* service. 3 L.P. R.A. § 641 *et seq.* As the name implies, the noncompetitive service does not require qualification by examination; persons in that service are generally high-level appointees charged with important executive responsibilities and also appointees whose role requires a close and confidential relationship with the appointing authority. The competitive service is similar to the civil service as it has developed in most American states and in the federal government. The exempt service is not relevant to this case. *See generally Diaz Gonzalez v. Superior Court* (No. 0–73–206 Sup.Ct. of P.R., April 22, 1974); *Pastor Lozada v. Canals* (No. R–73–314, Sup.Ct. of P.R., Feb. 4, 1974).

As the district court noted, "[e]mployees in non-competitive positions are not entitled to a hearing upon termination unless they are charged with a wrongdoing absent, of course, an illegal motivation." 385 F.Supp. 1238 n.13.

6. The district court did not accept defendants' statutory explanation of their actions, but it should be stressed that the gravamen of the court's decision is that defendants did not properly understand Puerto Rican law—not that they acted lawlessly or arbitrarily.

7. Defendant Elisa Diaz Gonzalez' letter of April 25, 1973 to plaintiff stated in pertinent part:

"After a thorough study, the State Personnel Office has determined that the action taken in including you in the Competitive Service, pursuant to the provisions of Section 8, Sub-section (d) of the Personnel Act, is illegal. Therefore, you continue as an employee in the Non-competitive Service.

"Pursuant to this letter and effective within thirty (30) days from the receipt of this communication, I have decided to terminate your services as Executive Director IV (Assistant Secretary of Administration)."

ing agreed to accept appointment as "Executive Director IV" in the Department of Social Services was transferred to that department. Upon his arrival at the Department of Social Services, plaintiff signed official form "OP–15." That form stated that his position as "Executive Director IV" was in the non-competitive service.[8]

(3) On October 27, 1971, the Director of Personnel—citing § 648(d) as his authorization—included the position of "Executive Director IV" in the competitive service. (He had been requested to do so by Mr. Efrain Santiago on October 8, 1971, plaintiff having discussed the form OP–15 matter with Mr. Santiago at some time subsequent to September 16, 1970.)

(4) In January, 1973 defendant Elisa Diaz Gonzalez became Secretary of Social Services and defendant Milagros Guzman became Director of Personnel. They are members of a political party different from plaintiff's and their party had won the Puerto Rican elections in 1972.

(5) On March 30, 1973 defendant Elisa Diaz Gonzalez requested of defendant Milagros Guzman an opinion as to the legality of the employment status of plaintiff (among others). Defendant Milagros Guzman replied on April 13, 1973 that plaintiff had improperly been granted competitive status on October 27, 1971 and therefore was still in the non-competitive service. Mrs. Guzman cited § 648(d), as she interpreted it, as the basis for her ruling.[9]

It is obvious that the meaning of § 648(d),[10] is central to a resolution of this dispute, and it is equally obvious that the parties differ as to its meaning. If defendants are right in their contention that under § 648(d) plaintiff was at all relevant times in the non-competitive service, then no wrongful act occurred when "[p]laintiff was not afforded an opportunity to be heard on the abrupt change of status in his civil service career from competitive to non-competitive service, nor on his termination of employment after twenty-nine years of service," 385 F.Supp. at 1233.[11] If, on the other hand, defendants' understanding of § 648(d) was inaccurate, the issue of their liability under § 1983 would have to be directly confronted.[12]

---

**8.** It should be emphasized that plaintiff's accession to the rank of "Executive Director IV" appears to have been purely voluntary on his part as does his signing of form OP–15.

**9.** The district court summarized Mrs. Guzman's opinion as follows:

"Mrs. Guzman's opinion was to the effect that the approval made under the provisions of Section 648(d) of Title 3, Laws of Puerto Rico Annotated, by the former Director of Personnel of the former Secretary of Social Services' petition with respect to plaintiff's position, was illegal for . . . at the time of the approval plaintiff was not in the Competitive Service, but contrarywise, in the Non-Competitive Service." 385 F.Supp. at 1232.

**10.** Section 648(d) reads:

"Nothing provided in this section shall preclude an appointing authority from assigning the duties and functions of any position in the non-competitive service to an employee in the competitive service."

**11.** If defendants' understanding of § 648(d) is correct, then there was in fact no "abrupt change of status," but simply a recognition that the prior classification was illegal.

**12.** Because of our ultimate decision in this case, we need not consider at this time the extent to which the "good faith" defense to an action for damages under § 1983 might be applicable given the facts of this case. We would recall, however, our recent observation that "[i]n the absence of subjective bad faith, a party is liable for damages under § 1983 only when he has violated the clearly established constitutional rights of a plaintiff." *Morris v. Travisono*, 528 F.2d 856, 858 n.5 (1976). *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although we do not pass on the issue at this time, we would confess that we have some difficulty comprehending how a bona fide disagreement as to the import of a statute can amount to a violation of clearly established rights. *See Scheuer v. Rhodes, supra* at 247, 94 S.Ct. 1683; *Gaffney v. Silk*, 488 F.2d 1248, 1251 (1st Cir. 1973).

■ Our own reading of § 648(d) does not convince us that under it the controverted action of the Director of Personnel on October 27, 1971 was clearly illegal or clearly legal. The statute is ambiguous in this respect,[13] and we cannot say that the contentions of either side in this dispute are patently unreasonable. We do not think, however, that it is for a federal court to cut this particular gordian knot. We believe that the district court should have abstained and allowed the Commonwealth courts to rule on the issue.[14]

■ Abstention is "an equitable doctrine premised on the 'avoidance of needless friction with state policies.'" *Druker v. Sullivan,* 458 F.2d 1272, 1274 (1st Cir. 1972), quoting *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See also Catrone v. Massachusetts State Racing Commission,* 535 F.2d 669 (1st Cir. 1976). Precisely because it is an equitable principle requiring careful balancing of competing considerations, *see Railroad Commission v. Pullman Co., supra*

at 500, 61 S.Ct. 643, at 645, the doctrine of abstention cannot readily be reduced to a simple formula. "There have been as many and as variegated applications of this supple principle as the situations that have brought it into play." *Id.* Nevertheless, some of the considerations which must be weighed can be itemized:

"Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereigns, the unnecessary impairment of state functions, and the premature determination of constitutional questions." *Martin v. Creasy,* 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959).

*See also Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, 44 U.S.L.W. 4372 (1976); *Carey v. Bert Randolph Sugar and Wrestling Revue, Inc.,* —— U.S. ——, 96 S.Ct. 1208, 47 L.Ed.2d 587, 44 U.S.L.W. 4416 (U.S. March 24, 1976). The

---

**13.** Thus the present situation is unlike those where we have declined to abstain because we were faced with an unambiguous statute. *See Oppenheimer Mendez v. Acevedo, supra* at 1375 (1975); *Lavoie v. Bigwood,* 457 F.2d 7, 9 n.1 (1972).

**14.** The precise ground of the district court's reasoning is not entirely clear. At times it seems to treat the Commonwealth's statutory scheme as consisting of a series of technicalities which can be equitably dispensed with. Statements like the following are illustrative of this attitude:

"It must be borne in mind that plaintiff has always been a career employee in the Competitive Service of the Government of the Commonwealth of Puerto Rico. Except for the period from September 16, 1970, to October 27, 1971, he unequivocally maintained a competitive service status. The short period that he did not, technically speaking, have competitive service status as alleged by defendants, was satisfactorily explained. It could very well be that he is entitled to be considered as in the competitive service for said period." 385 F.Supp. at 1237.

"This court is mindful of the importance of the administration of the public civil service system in the Commonwealth of Puerto Rico and the need to maintain the public trust in the civil service. Likewise, we are mindful that the legal framework provided in the Personnel Act of the Commonwealth of Puerto

Rico represents the most effective guarantee of selective and efficient public service and helps in the materialization of the public policy that contemplates a system of merit as the motivating factor for civil service. Notwithstanding, we are of the opinion that when we are confronted with a career public employee's expectancy of continued employment as in the case at bar, vis-a-vis the exercise of the duties and powers of the Director of Personnel, as she interprets the applicable laws and regulations, *this Court is bound to balance the equities involved.* 385 F.Supp. at 1239 (emphasis added).

We believe that in a case involving possible liability of state officials under § 1983, it is not for a federal court to "balance the equities" when it is confronted with the necessity of interpreting a statute whose author was not the Congress. *Cf. Usatorre v. The Victoria,* 172 F.2d 434, 439–41 & nn. 8–16 (2d Cir. 1949).

Moreover, other considerations which affected the district court's decisionmaking process to some extent—e. g. the question of plaintiff's alleged reliance on verbal assurances that his status in the competitive service would not be affected by his becoming Executive Director IV and the possible relevance to plaintiff's situation of Rule 9(c) of the Rules of Personnel—may also properly be considered by the Commonwealth courts.

considerations set forth in *Martin v. Creasy* all seemed to counsel abstention in the factual and legal context of this case.[15] Since resolution by the Commonwealth courts of the statutory ambiguity outlined above might well moot the constitutional issue (viz. the alleged denial of procedural due process), this is a proper case for abstention.[16] *See Catrone v. Massachusetts State Racing Commission, supra.* "Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law." *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). *See Reed v. Board of Election Commissioners,* 459 F.2d 121, 124 (1st Cir. 1972); *Palmigiano v. Affleck,* 327 F.Supp. 1280, 1283–84 (D.R.I. 1971) (three-judge court). *Cf. Perry v. Sindermann,* 408 U.S. 593, 604, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972) (Burger, C. J., concurring).

While we realize that our directing abstention in this case will require vacation of both the district court's own judgment and its assessment of attorneys' fees and the judgment which the court entered on the jury verdict, we believe that our system of federalism requires no less, *see Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). As the Supreme Court has very recently stated: "Where . . . the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 607, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4100 (1976), quoting *Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951). Moreover, abstention is particularly appropriate where a Puerto Rican statute is at issue, since, as the Supreme Court has noted: "The relations of the federal courts to Puerto Rico have often raised delicate problems. It is a Spanish-speaking Commonwealth with a set of laws still impregnated with the Spanish tradition." *Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 42, 91 S.Ct. 156, 157, 27 L.Ed.2d 174 (1970).

The district court should retain jurisdiction of this case while plaintiff seeks, if he so chooses, a decision from the Commonwealth courts concerning the statutory questions which underlie his § 1983 action. *Zwickler v. Koota,* 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Reed v. Board of Election Commissioners, supra* at 124; *Reid v. Board of Education,* 453 F.2d 238, 244 (2d Cir. 1972); *Steele v. Haley,* 451 F.2d 1105, 1106 (1st Cir. 1971).[17]

---

**15.** Plaintiff's opposition to abstention is expressed wholly in the following statement in its brief:

> "This case, however, is not one proper for abstention, since it involves a federal claim requiring federal adjudication. Rights under the federal Constitution are the proper subject of adjudication by federal courts, and jurisdiction may not be declined simply because the federal right may be asserted and vindicated in some other forum. *Indiana State Employee Assn. v. Boehning,* 511 F.2d 834 (7th Cir., 1975)."

No other case or principle is referred to as authority for the proposition that abstention would not be appropriate here, and the one case cited was reversed by the Supreme Court more than a month before the submission of this brief. *Boehning v. Indiana State Employees Assn.,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975). In *Boehning,* the Supreme Court held that abstention would be appropriate because of the possibility that the state courts might construe the state statute in a manner that would obviate the necessity of the federal court's passing on the constitutional issue raised under § 1983. The parallel between *Boehning* and the case at bar is clear.

**16.** The fact that this is a § 1983 action does not by itself make abstention inappropriate. *See Reid v. Board of Education,* 453 F.2d 238, 242 (2d Cir. 1972); Field, Abstention in Constitutional Cases: The Scope of the *Pullman* Abstention Doctrine, 122 U.Penn.L.Rev. 1071, 1131–1134 & nn. 161–166 (1974).

**17.** At the present time we need not rule on whether the district court properly awarded attorneys' fees to the plaintiff. The court's rationale in so doing was apparently the "bad faith" exception to the usual American rule. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). We would comment, however, that our preliminary examina-

*The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.*

tion of the record does not reveal whereby defendants have "acted in bad faith, vexatiously, wantonly or for oppressive reasons" so as to justify such an award. *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).