James MURRAY et al.

v.

John H. NORBERG et al.

Civ. A. No. 76-292.

United States District Court,
D. Rhode Island.

Dec. 7, 1976.

James Murray, Pawtucket, R. I., for plaintiffs.

Milton Stanzler, Christopher Del Sesto, J. Peter Doherty, Sp. Asst. Atty. Gen. of R. I., Providence, R. I., for defendants.

## OPINION

Before McENTEE, Circuit Judge, PETTINE, Chief Judge, and DAY, Senior District Judge.

1. Murray and Pacia filed this action on July 23, 1976, while they were candidates for the general election in November. On August 25, a request for a temporary restraining order was denied by Chief Judge Pettine, sitting as a single judge. Similar relief in the First Circuit was denied on August 30, on the ground that temporary injunctive relief would be available from the three-judge court "at the earliest practicable day". *Murray v. Norberg,* Misc. 8083 (1st Cir., August 30, 1976). Due to unavoidable problems in convening the three-judge court, a hearing could not be scheduled until October 18, immediately prior to the November 2 election. Although the parties have not raised the issue, the Court assumes that the request for declaratory relief has not been mooted out by the intervening election. Cases involving challenges to election laws are at the core of the category of cases "capable of repetition, yet evading review." *See Dunn v. Blumstein,* 405 U.S. 330, 333 n.2, 92 S.Ct. 995, 998, 31 L.Ed.2d 274 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

2. Swift was added as a party plaintiff at the hearing when it appeared that an earlier plaintiff, Linda Noblet, had not in fact checked off a dollar to the non-partisan account. Although Swift ran in the November election as an independent candidate for governor, he appears here solely as a taxpayer who checked off a dollar to the non-partisan general account.

PETTINE, Chief Judge.

Plaintiffs challenge the constitutionality of Rhode Island General Laws § 44–30–2(e) (Supp.1975) on the ground that the statute violates First, Fourteenth, and Fifteenth Amendment rights of independent candidates for elective office and of certain Rhode Island taxpayers.

Plaintiffs are James Murray and Pasquale Pacia, independent candidates for Rhode Island State Senator, 39th District, and United States Representative, 2nd Congressional District of Rhode Island respectively,[1] and John C. Swift, a Rhode Island resident and taxpayer.[2] R.I.G.L. § 44–30–2(e), the challenged statute, permits a credit of one dollar against the Rhode de Island personal income tax otherwise due.[3] Each taxpayer may designate this "political contribution" of one dollar[4] (hereinafter referred to as a "checkoff"), to (a) a political party that nominated a candidate for governor who received 5% of the vote

3. R.I.G.L. § 44–30–2(e) (Supp.1975) read as follows:

"(e) There shall be allowed as a credit against the Rhode Island personal income tax otherwise due for a taxable year, a contribution of one dollar ($1.00), or two dollars ($2.00) if married and filing a joint return, to a political party as defined in § 17–12.1–14 of the general laws, designated by the taxpayer or to a non-partisan general account if indicated. The credit for the political contribution shall appear on the face of the state personal income tax return. The tax administrator shall annually forward by August 1, all political contributions to the state general treasurer and the treasurer shall annually remit by September 1, the designated partisan contributions to the chairman of the appropriate political party and the contributions made to the non-partisan general account shall be allocated by the state general treasurer to each such political party in proportion to the combined number of votes its candidates for general offices received in the previous election, after five percent (5%) of the amount in the account is allocated to each such party for each general officer elected in the previous statewide election."

There is no legislative history available for this section, enacted in 1973 and now codified in the Personal Income Tax title of the Rhode Island General Laws.

4. *See* note 3, *supra.*

cast, or (b) a non-partisan general account which is allocated to political parties in proportion to the combined number of votes cast for the general offices in the previous election after 5% of the non-partisan fund is allocated to a party for each general officer elected. Section 44–30–2(e) is administered by Defendants Norberg and Hawksley, the tax administrator and general treasurer of Rhode Island, respectively, who forward the partisan contributions and allocated portion of the non-partisan contributions to Defendant Coleman, chairman of the Democratic State Committee and Defendant Campanella, chairman of the Republican State Committee.

Candidate-plaintiffs Murray and Pacia, on behalf of themselves and a class of independent candidates, contend that § 44–30–2(e), on its face and as applied, invidiously discriminates against then by financing the candidacies of major party candidates, but not independent candidates. Taxpayer-plaintiffs Murray and Swift, on behalf of themselves and a class of taxpayers who checked off a dollar to the non-partisan fund, contend that the operation of the checkoff scheme denies them due process of law in that the tax form misleadingly invites a contribution to a non-partisan fund without notifying the taxpayer that this non-partisan fund will be allocated, under the statute, to the established political parties. They also claim that they are denied equal protection of the laws and First Amendment rights by being denied an opportunity to support independent candidates through the checkoff scheme.

The matter came on to be heard on October 18, 1976, before a three-judge court, pursuant to 28 U.S.C. § 2281 (1970) on plaintiffs' application for preliminary and permanent injunctive and declaratory relief. Plaintiffs have also moved to certify this case as a class action. Jurisdiction is invoked under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

## Class Certification

■ Taxpayer-plaintiffs seek to represent "a class of Rhode Island residents and taxpayers who, when they filled out tax returns for the tax year of 1973, 1974, and 1975, checked off a one dollar contribution (or two dollars if a joint return) for the non-partisan general account. (Class I)"

Upon examination of plaintiffs' allegations, serious doubt is cast on the propriety of certifying such a class in this case. Plaintiff Murray alleges that he was misled by the term "non-partisan general account" into believing that funds from that account would go to non-partisan candidates for public office to *the exclusion of candidates of any political party*. Plaintiff Swift testified that he believed that the non-partisan general account would subsidize independent candidates *and minor party candidates*. *Amicus Curiae* American Civil Liberties Union understands non-partisan to refer to elections such as school board elections where *none* of the candidates carries party designation. Memorandum of Amicus Curiae A.C.L.U. at 11. *Cf. Opinion to the House of Representatives*, April 23, 1953, 80 R.I. 288, 96 A.2d 627 (1953).

The standard dictionary definitions of "non-partisan" appear to undercut both plaintiffs' interpretations of the term, and appear to be consistent with the definition found in § 44–30–2(e) under which non-partisan contributions are distributed to political parties as defined by Rhode Island law. *See* Webster's Third New International Dictionary (1961) (not affiliated with "a *particular* party") (emphasis added); Webster's New Twentieth Century Dictionary ("not . . . supporting *any single* political party") (emphasis added). Thus, Murray's and Swift's claims that the tax form deprives them of due process may stem from their own peculiar, idiosyncratic interpretation of the term "non-partisan" rather than any vagueness inherent in the statute or tax form. Under these circumstances, the Court cannot find that either the commonality, typicality, or adequacy of representation requirements of Rule 23, F.R.Civ.P., are met. Additionally, the relief sought by plaintiffs, if granted, would inure to the

benefit of all those similarly situated, and would be identical regardless of whether or not the action is maintained as a class action. No useful purpose would be served by maintaining this as a class action. The Court therefore will deny certification to the claimed class of taxpayer-plaintiffs. *See Nelson v. Likins,* 389 F.Supp. 1234 (D.Minn.1974) *aff'd per curiam* 510 F.2d 414 (8th Cir. 1975); *see also Schneider v. Margossian,* 349 F.Supp. 741, 746 (D.Mass.1972); *District of Columbia Podiatry Soc. v. District of Columbia,* 65 F.R.D. 113 (D.D.C. 1974).

■ Candidate-plaintiffs seek to represent

"A class of non-partisan or independent candidates not affiliated with either of the two major political parties who in 1974, 1975, and 1976 qualified for and sought elective office as members of the United States Congress, Rhode Island General Officers, or as members of the Rhode Island General Assembly. (Class II)"

However, the class as described numbers less than 20.[5] Joinder would appear to be clearly practicable; each of the class members could be easily located and informed of the pendency of the action. Plaintiffs have not, except in the most conclusory way, asserted otherwise, and have thus failed to carry their burden of demonstrating the satisfaction of the requirements of Rule 23(a), F.R.Civ.P. The Court is therefore of the opinion that the numerosity requirement of Rule 23(a) is not met, and certification of Class II must also be denied. Additionally, as noted above, the Court notes that no useful purpose would be served by maintenance of this matter as a class action, since any relief granted would inure to the benefit of all candidates similarly situated.

### Abstention and Certification

#### A. Candidates' Claims

■ Plaintiffs contend that the allocation of checkoff funds to party candidates, but not to independent candidates, constitutes invidious discrimination condemned by the Fourteenth Amendment to the Constitution. They rely on *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) in which the Supreme Court, *per curiam,* noted that the federal election campaign financing plan, which provided funds to candidates, might be constitutionally infirm by virtue of its exclusion of independent candidates from election funding. *Id.,* at 87 n.118, 96 S.Ct. 612 (dictum); *see also id.,* at 89 n.122, 96 S.Ct. 612; *Storer v. Brown,* 415 U.S. 724, 745–46, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Buckley v. Valeo,* 171 U.S.App. D.C. 172, 519 F.2d 821, 887 (1975). Although a state may distinguish between candidates for financing purposes on the basis of demonstrated popular support, *Buckley v. Valeo, supra,* 424 U.S. at 96, 96 S.Ct. 612, and deny funding altogether to candidates who fail to show such support, *id.,* at 103, there is serious question whether a state has such an interest in a party system that it could deny campaign funding altogether to independent candidates, while making it available to party candidates. *See Buckley v. Valeo, supra; Storer v. Brown, supra; cf. McKenna v. Reilly,* 419 F.Supp. 1179, 1185–87 (D.R.I.1976). Plaintiffs contend that the § 44–30–2(e) is a candidate financing scheme, and ask this Court to strike it down for its total exclusion of independent candidates from election funding.[6] They further complain that, even if

---

5. Since no retroactive relief was sought, plaintiffs should properly have attempted to represent only those independent candidates running in the 1976 election, of whom there were fewer than ten.

6. In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the federal election campaign financing plan upheld by the Court provided for *post*-election funding of non-major party candidates based on their showing in the election. *Id.* at 102, 96 S.Ct. 612. The Supreme Court was therefore not faced with the argument, presented here, that conditioning the benefits of public financing of non-major candidates on past electoral participation, in addition to demonstrated support, is an unfair burden. The Court noted that post election funding could benefit the non-major party candidates during the election itself, by serving to attract lenders. *Id.* As the Supreme Court noted, the Court of Appeals had considered,

§ 44–30–2(e) is denominated a *party*-financing plan, it is unconstitutional as applied because the parties use the funds received for the benefit of individual candidates.

On the other hand, defendants cite *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), where the Supreme Court upheld a *party* financing plan. Texas law authorized the distribution of state funds to the major parties to defray the costs of primary elections required by the state, and denied funds to other parties which were not required to hold such primaries. The Court held that Texas did not invidiously discriminate against particular parties when it reimbursed all of the parties (and only those parties) which bore particular costs imposed by the state. *Id.* at 792–94, 94 S.Ct. 1296. *American Party* seems to recognize a legitimate state interest in the maintenance of party structure to permit a party's assumption of certain state electoral functions, and to sanction distribution of state funds to a party for that purpose.[7]

Defendants Campanella and Coleman contend that § 44–30–2(e) is a party financing scheme which passes constitutional muster under the holding of *American Party of Texas v. White, supra.* They further assert that once they receive funds from both the partisan and non-partisan checkoff contributions, they may commingle such funds with their other contributions and spend them for any legitimate purpose, including the support of individual candidates.[8]

Defendants Norberg and Hawksley seem to argue that § 44–30–2(e) is a party funding plan (constitutional under *American Party, supra*) which does not permit defendants Campanella and Coleman to spend checkoff funds for individual candidates.[9]

Whether § 44–30–2(e), on its face and as applied is a *candidate* or *party* financing scheme raises a question of serious constitutional dimensions. Since the question being debated here uniquely pertains to a vital state interest in its own political process, it is particularly appropriate for the Rhode Island Supreme Court to construe the statute. Such construction might well avoid the constitutional issues.[10]

but not ruled on, the possibility of construing the provisions for financing minor party candidates in the federal law to include independent candidates as well. See *id.,* at 87 n.118, 96 S.Ct. 612.

**7.** There was no contention in *American Party of Texas* that state funds were used to benefit particular candidates; it appears from the record that funds were used solely for general operating expenses. *American Party of Texas v. White,* 415 U.S. 767, 793–94, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). Similarly, the federal election funding statute upheld in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) forbids the use of funds allocated for party purposes "to defray the expenses of any candidate". *See* 26 U.S.C. § 9008(c) (1970 ed., Supp. IV). *See Buckley v. Valeo, supra,* 424 U.S. at 87, 96 S.Ct. 612.

**8.** *But see McKenna v. Reilly,* 419 F.Supp. 1179 (D.R.I.1976), where Chief Judge Pettine ruled, on a motion for preliminary injunctive relief, that the provision of checkoff funds to endorsed party candidates in the primary election, and not to unendorsed candidates, violated the equal protection clause of the Fourteenth Amendment. *Id.* at 1185–87.

**9.** Although the state defendants do not concede that § 44–30–2(e) would be constitutionally in-

firm if it were found to authorize financing of candidates, they agree that it should not be so construed. *See* Defendants' prehearing memorandum, at 10.

**10.** Rule 6 of the Rules of Appellate Procedure, Rhode Island Supreme Court Rules (1976 ed.) provides:

6. Certification of questions of law.
Section 1. This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.
Section 2. This Rule may be invoked by an order of any of the courts referred to in section 1 upon that court's own motion or upon the motion of any party to the cause.
Section 3. Contents of Certification Order. A certification order shall set forth (1) the questions of law to be answered; and (2) a statement of all facts relevant to the ques-

The plaintiffs oppose this procedure, contending § 44–30–2(e) is not susceptible of a constitutional interpretation. We disagree. The practice of the Rhode Island Supreme Court has been to construe state statutes so as to save their constitutionality, *see, e. g., In re Correia,* 104 R.I. 251, 243 A.2d 759 (1968), and to supply necessary language to enable statutes to meet constitutional muster, *see, e. g., J. M. Mills v. Murphy,* 352 A.2d 661 (R.I.1976). It is well settled in Rhode Island that an enactment should not be read literally if to do so would result in attributing to the legislature an intention that is contradictory of or inconsistent with the purposes evidenced in the act. *See Providence Journal Company v. Mason,* R.I., 359 A.2d 682 at 686 (1976); *Angel v. Murray,* 113 R.I. 482, 322 A.2d 630 (1974).

Second, plaintiffs claim that certification and abstention are disfavored in civil rights or First Amendment cases. This is true where First Amendment rights would be lost or inhibited by the delay entailed in certification, *Baggett v. Bullitt,* 377 U.S. 360, 379, 84 S.Ct. 1316, 12 L.Ed.2d 377. However, where, as here, plaintiffs' rights will not be jeopardized by delay, nor chilled by further uncertainty, this argument against abstention loses its force. See *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Palmigiano v. Affleck,* 327 F.Supp. 1280, 1283 (D.R.I.1971) (three-judge court).

The Court therefore finds abstention appropriate, *see Diaz Gonzalez v. Colon Gonzalez,* 536 F.2d 453 (1st Cir. 1976) and certifies the following question to the Rhode Island Supreme Court:

1. May funds derived from R.I.G.L. § 44–30–2(e) be used by defendants Campanella and Coleman for the direct benefit of identifiable candidates, or must such funds be segregated and used solely to defray the general operating expenses of the political parties they represent?

## B. Taxpayer Claims

The income tax forms filled out by plaintiff-taxpayers permit each taxpayer to designate a political party or a "non-partisan general account" to receive the allowable dollar contribution.[11] The accompanying instructions inform the taxpayer that the non-partisan general account will be distributed "according to law".[12] Plaintiffs con-

---

tions certified and showing fully the nature of the controversy in which the questions arose.

Section 4. Preparation of Certification Order. The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to this court by the clerk of the certifying court under its official seal. This court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of this court, the record or portion thereof may be necessary in answering the question.

Section 5. Costs of Certification. Fees and costs shall be the same as in civil appeals docketed before this court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

Section 6. Briefs and Argument. Proceedings in this court shall be those provided in these rules governing briefs and arguments.

Section 7. Opinion. The written opinion of this court stating the law governing the questions certified shall be sent by the clerk under the seal of this court to the certifying court and to the parties. (As adopted by the court April 24, 1974.)

11. The 1975 Rhode Island Individual Income Tax Return, Form RI–1040, provides on line 7B: "POLITICAL CONTRIBUTION: If you wish it to be paid over to a specific political party, check the first box (_____ Party) and fill in the name of the political party. If you wish it to be paid over to a non-partisan general account check second box (Non-partisan General Account.)"

12. The Specific Instructions for the 1975 Form RI–1040 provide the following guidance for lines 7A and 7B:

Line 7A—Political Contribution. If you wish to designate One Dollar of your tax (Two Dollars if married and filing a joint return) to be paid over as a political contribution to the State party of your choice, or to a non-partisan general account for distribution *under the law,* you should check the box on line 7A, and make your designation on line 7B on the reverse side of the form. If line 2 shows no Rhode Island tax, you cannot make this contribution.

Line 7B—Political Contribution. If you checked line 7A, make only one designation

tend that they may not be held responsible for knowing what distribution the law directs, and that as currently written, the tax form is misleading and deprives them of due process of law by its vagueness.

 Vagueness in official documents, of course, ordinarily constitutes a violation of due process only where the aggrieved party can show that the statute or pronouncement fails to give adequate notice of some duty that government imposes upon him or her. No claim of that kind is made here, and the exact nature of the due process claim is thus somewhat cloudy. However, the Court will assume, without now deciding, that state officials who prepared a tax form so vague that it patently and fraudulently misled taxpayers into supporting candidates whom they had no intention of supporting would deprive those taxpayers of some interest cognizable under the Fourteenth Amendment. This appears to be the essence of plaintiffs' claim, and its resolution depends in the first instance on the proper construction of the statute pursuant to which the tax form was prepared. Hence, a construction from the state Supreme Court in ascertaining whether the present tax forms conform to the legislative mandate might well obviate the necessity of our passing on the constitutional claim presented. We therefore deem it appropriate to refer the following question to the Supreme Court of Rhode Island:

2. Do the instructions accompanying the Rhode Island tax form, and the form itself, properly conform to R.I.G.L. § 44-30-2(e)?

The election having passed, plaintiffs' request for injunctive relief fails for lack of the requisite showing of irreparable harm. Jurisdiction will be retained on the claims for permanent injunctive and declaratory relief.

The Clerk will prepare an Order certifying the above questions, and forward it together with this opinion to the Rhode Island Supreme Court.

So Ordered.

on line 7B, either by naming a political party, or by checking the box for the non-partisan general account. If you designate: (a) a non-existent political party; or (b) on neither line; or (c) a particular office; or (d) an individual officeholder, or political figure; or (e) a national party which is not a state party; your political contribution will be credited to the non-partisan account. If you designate: (1) more than one political party; or (2) a political party and also the non-partisan general account; your contribution will be credited to the first political party named. (emphasis added).